## In re MERRITT'S ESTATE.

1. WILLS—EXECUTION—WITNESSES.

Will, executed in New York where only two witnesses are required, *held,* validly executed where two of the three witnesses testified to proper execution, notwithstanding third witness denied signature was hers.

2. SAME—LETTER—FINDINGS—EVIDENCE.

Finding of jury that letter written by deceased was intended to be her will *held*, amply supported by evidence.

3. SAME—INSTRUCTIONS—EXTRINSIC EVIDENCE.

Instruction in contest to determine whether or not letter written by deceased was intended as her will, claimed by contestants to have been an expression of her desire to have the guardian of her estate transfer it to her brother, permitting introduction of extrinsic evidence to determine whether it was intended merely as a request for transfer of her property to her brother during her lifetime or after her death *held*, fair.

4. SAME—UNDUE INFLUENCE—MENTAL COMPETENCY—EVIDENCE.

Record in will contest being without evidence showing exercise of undue influence upon, or mental incompetency of, testatrix, court was not in error in charging as a matter of law for proponent on such issues.

5. SAME—MENTAL COMPETENCY—EVIDENCE—GUARDIANSHIP.

Guardianship of estate, but not person of, testatrix and finding in the probate court order, made in 1918, that she was mentally incompetent to manage her estate *held*, of no probative force, in 1936, upon her mental capacity to make a will.

6. SAME—AMBIGUITY—EXTRINSIC EVIDENCE.

Ambiguous letter, supplemented by evidence of contemporaneous and subsequent declarations by writer thereof, *held*, sufficient evidence upon which trier of facts could find intent to have letter constitute a will.

Appeal from Kent; Verdier (Leonard D.), J. Submitted June 15, 1938. (Docket No. 60, Calendar No. 40,101.) Decided October 5, 1938.

In the matter of the estate of Olive Merritt, deceased. The will of Olive Merritt was presented for probate. Salley Lavender, personally and in behalf of other heirs-at-law, objected thereto. From order admitting will to probate, contestants appealed to circuit court. Verdict and judgment for proponent. Contestants appeal. Affirmed.

*Dale Souter* and *Monness & Monness,* for proponent.

*Gillard & Gillard* and *McAllister & McAllister,* for contestants.

WIEST, C. J.   As stated by the contestants:

"This is an appeal from a judgment of the circuit court for the county of Kent allowing the last will and testament of Olive Merritt, deceased.   The contestants have appealed from this judgment, claiming that the letter sought to be probated is not a will on its face, and that if it is a will, then the court erred in refusing to submit the case to the jury," on questions of fraud and undue influence.

Olive Merritt, in 1917, had been a long-time resident of Grand Rapids and possessed a substantial estate.   She was a childless widow.   In October, 1917, the probate court for the county of Kent appointed a special guardian for Mrs. Merritt's estate and, in February, 1918, the probate court for the county of Kent, on a finding that "she is mentally incompetent to have the charge, custody and management of her person and estate," appointed a general guardian for Mrs. Merritt's *estate.*   In November, 1917, Mrs. Merritt went to live with her brother, John A. Boone, in the city of New York and remained there until her death in September, 1936.   During such period of about 18 years the guardian was authorized to pay, and paid Mr. Boone $25 a week for the support and maintenance of Mrs. Merritt.   At the time of her death Mrs. Merritt was about 68 years of age.   On May 6, 1936, while so living with her brother, Mrs. Merritt sent a letter, addressed to the probate judge for Kent county, and it was received by the court, placed on file and ad-

mitted to probate in the probate and circuit courts as the last will and testament of Mrs. Merritt.

We quote the letter:

"New York, May 6, 1936"

"Mr. CLARKE E. HIGBEE,
"Judge of Probate Court,
"Grand Rapids, Michigan.
"My dear Judge Higbee:

"I have been living here with my brother and his dear wife for 19 years, but God in his wisdom saw fit to call my sister-in-law, Mrs. Olivia Boone, four years ago on the 5th day of March.

"Since she has passed on, I have been keeping house for my brother and am now in my right mind and knowing just what I am doing.

"I say to you, Mr. Clarke E. Higbee, and to my guardian, the Michigan Trust Company, this is my Will and last statement.

"Please be kind enough to transfer and give my estate to my brother, John A. Boone, who has taken care of me all of these years.

"I am growing old, judge, I will be 68 on the 12th day of Sept. and would like to have some real pleasure in life and in my old years with what is really my own, and as my brother has now retired from the theatrical profession I am sure he will grant any request I may ask him.

"Thanking you for all favors you have given me in the past and trusting you will grant this my last request, I remain,

"Yours most sincerely,
"Olive Merritt
OLIVE MERRITT.

"Witnesses

SALLEY LAVENDER
GEORGE E. TIMM
ADRIAN A. FEEHAN."

One of the witnesses was a roomer at the Boone home and testified that Mrs. Merritt stated to him that she desired to make a will and, at her dictation, he took down the letter above mentioned, read it to her, she expressed approval thereof, he then had Mr. Boone typewrite what he had written and, in the presence of another roomer, who was a witness, and the sister of the deceased, she signed the letter, stating it was her will and asked the three mentioned persons to sign as witnesses, and they did so sign.

The sister, whose signature it is claimed is on the letter, was a witness at the trial and denied being present, as claimed by the former witness, and said that her name thereon did not carry her usual shading and she never witnessed the will but, at the request of Mr. Boone, had signed her name on the margin of a blank piece of paper.

The will was executed in the State of New York where two witnesses only are required, and two of the three witnesses testified to proper execution.

Contestants claim that the letter disclosed a desire on the part of Mrs. Merritt to have the management of her estate placed under the control of her brother, and that the letter was not so ambiguous as to authorize extrinsic evidence of the intent and purpose of Mrs. Merritt.

The court instructed the jury in part as follows:

"Now, to the extent that this letter requests a transfer of her estate to her brother John A. Boone as a will and last statement and as what she calls this my last request, it is a will. It is a declaration of her mind requesting a transfer of property, not during her lifetime, but upon her death, or after her death, to her brother. To the extent, however, that she requests this transfer so that during the remainder of her life she may have pleasure out of

what she calls really her own, knowing that her brother has dropped the theatrical profession and will grant her every request, it is a request, to have her property transferred to her brother during her lifetime and is not a will. So you see this document proposes—speaks two ways. Part of it has all the elements of a will and requests the transfer of her property to her brother upon her death. Part of it is not a will, because it is a request to transfer the property to her brother during her lifetime. Now, because this proposed document speaks two ways instead of one, you have to take into consideration what happened in order to find out what her intention was. You have to take into consideration the circumstances under which this document was drawn, the condition of her health, her expectation of life, long or short, what she said that she wanted done, not in this letter, but what she said orally both at the time the will was made and after it was made, in order to discover whether she intended by this instrument to cause a transfer of her property after her death.''

The jury found that Mrs. Merritt intended the letter to be her will, and this finding is amply supported by evidence.

The mentioned instruction fairly left to the jury the issue upon whether the letter was intended by Mrs. Merritt to be her last will and testament.

Our attention has not been directed to any evidence presenting an issue of undue influence, nor in our examination of the record have we found any. The same is true of the claim of mental incompetency of the testatrix.

The court was not in error in the following instruction:

''I charge you as a matter of law that there is no proof that you can consider as to mental incapacity to make this will, or as to undue influence.''

The guardianship of Mrs. Merritt was not of her person, and the finding in the probate court order, made in 1918, that she was mentally incompetent was an adjudication only as to her capacity to manage her estate and was of no probative force, in 1936, upon her mental capacity to make a will.

Contestants claim that after the letter was sent to the probate court Mr. Boone, the attending physician and an attorney, unsuccessfully, tried to get Mrs. Merritt to execute a will in favor of her brother. This testimony, along with that of repeated declarations by Mrs. Merritt that she had willed her estate to her brother, all went to the jury for consideration upon the issue of whether the letter was, in intent and purpose, Mrs. Merritt's last will and testament.

Upon the question of whether the ambiguous letter, supplemented by evidence of contemporaneous and subsequent declarations by Mrs. Merritt of her intent and purpose, constituted a will, see *Rue High, Appellant,* 2 Doug. (Mich.) 515; *Lautenshlager* v. *Lautenshlager,* 80 Mich. 285; *Ferris* v. *Neville,* 127 Mich. 444 (54 L. R. A. 464, 89 Am. St. Rep. 480); *In re Warmbier's Estate,* 262 Mich. 160; *Geisel* v. *Burg,* 283 Mich. 73.

We find no reversible error and the judgment is affirmed, with costs to proponent.

BUSHNELL, SHARPE, POTTER, NORTH, and CHANDLER, JJ., concurred. McALLISTER, J., did not sit. BUTZEL, J., took no part in this decision.