# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF DUANE FRANCIS HORTON II.

GUARDIANSHIP AND ALTERNATIVES, INC.,

Appellee,

v

LANORA JONES,

Appellant.

FOR PUBLICATION
July 17, 2018
9:20 a.m.

No. 339737
Berrien Probate Court
LC No. 2016-000202-DE

Before: HOEKSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Will contestant Lanora Jones appeals as of right the order of the Berrien Probate Court recognizing an electronic document as the valid will of her son, Duane Francis Horton II. Because the trial court did not err by concluding that Guardianship and Alternatives, Inc. (GAI) established by clear and convincing evidence that decedent intended his electronic note to constitute his will, we affirm.

The decedent, Duane Francis Horton II, committed suicide in December 2015, at the age of 21. Before he committed suicide, decedent left an undated, handwritten, journal entry. There is no dispute that the journal entry was in decedent's handwriting. The journal entry stated:

> I am truly sorry about this . . . My final note, my farewell is on my phone.
> The app should be open. If not look on evernote, "Last Note"[.]

The journal entry also provided an email address and password for "evernote."

The "farewell" or "last note" referred to in decedent's journal entry was a typed document that existed only in electronic form. Decedent's full name was typed at the end of the document. No portion of the document was in decedent's handwriting. The document contained apologies and personal sentiments directed to specific individuals, religious comments, requests relating to his funeral arrangements, and many self-deprecating comments. The document also contained one full paragraph regarding the distribution of decedent's property after his death:

-1-

Have my uncle go through my stuff, pick out the stuff that belonged to my dad and/or grandma, and take it. If there is something he doesn't want, feel free to keep it and do with it what you will. My guns (aside from the shotgun that belonged to my dad) are your's to do with what you will. Make sure my car goes to Jody if at all possible. If at all possible, make sure that my trust fund goes to my half-sister Shella, and only her. Not my mother. All of my other stuff is you're do whatever you want with. I do ask that anything you well, you give 10% of the money to the church, 50% to my sister Shella, and the remaining 40% is your's to do whatever you want with.

In addition, in a paragraph addressed directly to decedent's uncle, the note contained the following statement: "Anything that I have that belonged to either Dad, or Grandma, is your's to claim and do whatever you want with. If there is anything that you don't want, please make sure Shane and Kara McLean get it." In a paragraph addressed to his half-sister, Shella, decedent also stated that "all" of his "money" was hers.

During decedent's lifetime, he was subject to a conservatorship, and GAI served as his court-appointed conservator. GAI filed a petition for probate and appointment of a personal representative, nominating itself to serve as the personal representative of decedent's estate. GAI maintained that decedent's electronic "farewell" note qualified as decedent's will. Jones filed a competing petition for probate and appointment of a personal representative in which she nominated herself to serve as the personal representative of decedent's estate. In that petition, Jones alleged that decedent died intestate and that she was decedent's sole heir. After an evidentiary hearing involving testimony from several witnesses, the probate court concluded that GAI presented clear and convincing evidence that decedent's electronic note was intended by decedent to constitute his will. Therefore, the probate court recognized the document as a valid will under MCL 700.2503. Jones now appeals as of right.

On appeal, Jones argues that the trial court erred by recognizing decedent's electronic note as a will under MCL 700.2503. Jones characterizes decedent's note as an attempt to make a holographic will under MCL 700.2502(2), and Jones asserts that, while MCL 700.2503 allows a court to overlook minor, technical deficiencies in a will, it cannot be used to create a will when the document in question meets none of the requirements for a holographic will. Alternatively, as a factual matter, Jones argues that GAI failed to offer clear and convincing evidence that decedent intended the electronic note in this case to constitute his will as required by MCL 700.2503. We disagree.

I. STANDARD OF REVIEW AND RULES OF STATUTORY CONSTRUCTION

We review de novo the interpretation of statutes. *In re Reisman Estate*, 266 Mich App 522, 526; 702 NW2d 658 (2005). The interpretation of the language used in a will is also reviewed de novo as a question of law. *In re Estate of Bem*, 247 Mich App 427, 433; 637 NW2d 506 (2001). "We review the probate court's factual findings for clear error." *In re Koehler Estate*, 314 Mich App 667, 673-674; 888 NW2d 432 (2016). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. at 674 (quotation marks and citation omitted).

Regarding issues of statutory construction, our Supreme Court has explained:

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001) (citations omitted).]

## II. ANALYSIS

"The right to make a disposition of property by means of a will is entirely statutory." *In re Flury Estate*, 218 Mich App 211, 215; 554 NW2d 39 (1996). The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, governs wills in Michigan. The provisions in EPIC must "be liberally construed and applied to promote its purposes and policies," including to "discover and make effective a decedent's intent in distribution of the decedent's property." MCL 700.1201(b).

In a contested will case, the proponent of a will bears "the burden of establishing prima facie proof of due execution." MCL 700.3407(1)(b). Generally, to be valid, a will must be executed in compliance with MCL 700.2502, which provides:

> (1) Except as provided in subsection (2) and in sections 2503, 2506, and 2513, a will is valid only if it is all of the following:
>
> (a) In writing.
>
> (b) Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction.
>
> (c) Signed by at least 2 individuals, each of whom signed within a reasonable time after he or she witnessed either the signing of the will as described in subdivision (b) or the testator's acknowledgment of that signature or acknowledgment of the will.
>
> (2) A will that does not comply with subsection (1) is valid as a holographic will, whether or not witnessed, if it is dated, and if the testator's signature and the document's material portions are in the testator's handwriting.
>
> (3) Intent that the document constitutes a testator's will can be established by extrinsic evidence, including, for a holographic will, portions of the document that are not in the testator's handwriting. [MCL 700.2502.]

As set forth in MCL 700.2502(1), there are specific formalities that are generally required to execute a valid will. However, as expressly stated in MCL 700.2502(1), there are several

exceptions to these formalities, including less formal holographic wills allowed under MCL 700.2502(2) and the exception created by MCL 700.2503.[1] MCL 700.2503 states:

> Although a document or writing added upon a document was not executed in compliance with section 2502, the document or writing is treated as if it had been executed in compliance with that section if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute any of the following:
>
> (a) The decedent's will.
>
> (b) A partial or complete revocation of the decedent's will.
>
> (c) An addition to or an alteration of the decedent's will.
>
> (d) A partial or complete revival of the decedent's formerly revoked will or of a formerly revoked portion of the decedent's will.

"The plain language of MCL 700.2503 establishes that it permits the probate of a will that does not meet the requirements of MCL 700.2502." *In re Estate of Attia*, 317 Mich App 705, 711; 895 NW2d 564 (2016). Indeed, other than requiring "a document or writing added upon a document," there are no particular formalities necessary to create a valid will under MCL 700.2503.[2] Essentially, under MCL 700.2503, *any* document or writing can constitute a valid will provided that "the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute . . . [t]he decedent's will." MCL 700.2503(a). In considering the decedent's intent, "EPIC permits the admission of extrinsic evidence in order to determine whether the decedent intended a document to constitute his or her will." *In re Estate of Attia*, 317 Mich App at 709. See also MCL 700.2502(3).

In this case, it is undisputed that decedent's typed, electronic note, which was unwitnessed and undated, does not meet either the formal requirements for a will under MCL 700.2502(1) or the requirements of a holographic will under MCL 700.2502(2). Instead, the validity of the will in this case turns on the applicability of MCL 700.2503 and whether the trial court erred by concluding that GAI presented clear and convincing evidence that decedent intended the electronic document to constitute his will. To properly analyze this question, we

---

[1] MCL 700.2502(1) also recognizes exceptions as set forth in MCL 700.2506 and MCL 700.2513. These provisions do not apply in this case.

[2] That is not to say that formalities, or lack thereof, are irrelevant in a will contest involving MCL 700.2503. Formalities are considered indicative of intent. Restatement (Third) of Property: Will and Other Donative Transfers, § 3.3, comment *a*. Consequently, an adherence to some formalities, or conversely the extent of the departure from formalities, can be considered when determining whether a document was intended to be a will. See Uniform Probate Code, § 2-503, comment (1997) ("The larger the departure from Section 2-502 formality, the harder it will be to satisfy the court that the instrument reflects the testator's intent.").

must first briefly address Jones's characterization of decedent's note as a failed holographic will. In particular, contrary to Jones's attempt to conflate MCL 700.2503 and the holographic will provision, MCL 700.2503 is an independent exception to the formalities required under MCL 700.2502(1), which does not require a decedent to satisfy—or attempt to satisfy—any of the requirements for a holographic will under MCL 700.2502(2).[3] To require a testator to meet any specific formalities notwithstanding MCL 700.2503, "would render MCL 700.2503 inapplicable to the testamentary formalities in MCL 700.2502, which is contrary to the plain language of the statute." *In re Estate of Attia*, 317 Mich App at 711. Instead, under MCL 700.2503, while the proposed will must be a document or writing, there are no specific formalities required for execution of the document, and any document or writing can constitute a will, provided that the proponent of the will presents clear and convincing evidence to establish that the decedent intended the document to constitute his or her will. See MCL 700.2503(a).

Turning to the facts of this case, we find no error in the trial court's determination that decedent intended for the electronic document in question to constitute his will. See MCL 700.2503(a). In basic terms, "[a] will is said to be a declaration of a man's mind as to the manner in which he would have his property or estate disposed of after his death." *Byrne v Hume*, 84 Mich 185, 192; 47 NW 679 (1890). A will need not be written in a particular form or use any particular words; for example, a letter or other document, such as a deed, can constitute a will. See, e.g., *In re Merritt's Estate*, 286 Mich 83, 89; 281 NW 546 (1938); *In re Dowell's Estate*, 152 Mich 194, 196; 115 NW 972 (1908); *In re High*, 2 Doug 515, 521-522 (1847). However, in order for a document to be considered a will it must evince testamentary intent, meaning that it must operate to transfer property "only upon and by reason of the death of the maker." *In re Boucher's Estate*, 329 Mich 569, 571; 46 NW2d 577 (1951). Moreover, the document must be final in nature; that is, "[m]ere drafts" or "a mere unexecuted intention to leave by will is of no effect." *In re Cosgrove's Estate*, 290 Mich 258, 262; 287 NW 456 (1939) (quotation marks and citation omitted). Ultimately, in deciding whether a person intends a document to constitute a "will," the question is whether the person intended the document to govern the posthumous distribution of his or her property. See *In re Fowle's Estate*, 292 Mich 500, 504; 290 NW 883 (1940). As noted, whether the decedent intended a document to constitute a will may be shown by extrinsic evidence. *In re Estate of Attia*, 317 Mich App at 709; MCL 700.2502(3).

---

[3] Jones argues on appeal that the holographic will statute will be rendered meaningless if MCL 700.2503 can be used to circumvent the necessity of all requirements for a formal will under MCL 700.2502(1) as well as all requirements for a holographic will under MCL 700.2502(2). Contrary to this argument, the requirements for a holographic will under MCL 700.2502(2), like the more formal requirements for a will under MCL 700.2502(1), remain a viable—and perhaps more straightforward—means for expressing intent to create a will. See Restatement (Third) of Property: Will and Other Donative Transfers, § 3.3, comment *a* (1999). MCL 700.2503 simply makes plain that other evidence clearly and convincingly demonstrating intent to adopt a will should not be ignored simply because the decedent failed to comply with formalities. See Restatement (Third) of Property: Will and Other Donative Transfers, § 3.3, comment *b* (1999).

In this case, to determine whether decedent intended his farewell note to constitute a will, the trial court considered the contents of the electronic document[4] as well as extrinsic evidence relating to the circumstances surrounding decedent's death and the discovery of his suicide note as described by witnesses at the evidentiary hearing. After detailing the evidence presented and assessing witness credibility, the trial court concluded that the evidence "was unrebutted that the deceased hand wrote a note directing the reader to his cell phone with specific instructions as to how to access a document he had written electronically in anticipation of his imminent death by his own hands."[5] Regarding the language of the document itself, the trial court determined that the document unequivocally set forth decedent's wishes regarding the disposition of his property. Finding that decedent clearly and unambiguous expressed his testamentary intent in the electronic document in anticipation of his impending death, the trial court concluded that decedent intended the electronic document to constitute his will.

Reviewing the language of the document de novo, *In re Estate of Bem*, 247 Mich App at 433, we agree with the trial court's conclusion that the document expresses decedent's testamentary intent. On the face of the document, it is apparent that the document was written with decedent's death in mind; indeed, the document is clearly intended to be read after decedent's death. The note contains apologies and explanations for his suicide, comments relating to decedent's views on God and the afterlife, final farewells and advice to loved ones and friends, and it contains requests regarding his funeral. In what is clearly a final note to be read upon decedent's death, the document then clearly dictates the distribution of his property after his death. Cf. *In re High*, 2 Doug at 517-519, 521-522 (finding that letter offering parting

---

[4] On appeal, Jones argues that the probate court erred when it accepted a copy of the purported will into evidence as opposed to requiring an original of the document. However, Jones waived this argument in the trial court by expressly stating that she had no objections to the admission of the copy of the document into evidence. See *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 545; 854 NW2d 152 (2014). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *The Cadle Co v Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009). Therefore, we decline to address this issue.

[5] Jones argues that GAI did not present testimony that anyone saw decedent type the suicide note and that, because it was merely in electronic form, someone else could have typed or altered the suicide note. The trial court rejected Jones's argument that the document had been written or altered by someone other than decedent as mere speculation without supporting evidence. Jones does not dispute that the handwritten, journal entry was in decedent's handwriting. That journal entry directed its finder to decedent's cell phone. One of the individuals who found and read the electronic note on decedent's cell phone identified the contents of the note at the hearing. She indicated that she "know[s]" what the notes "says" and that she would "[a]bsolutely" recognize if the note had been changed. The probate court expressly found this witness's testimony to be credible. Deferring to the trial court assessment of credibility, *In re Estate of Erickson*, 202 Mich App 329, 331; 508 NW2d 181 (1993), the evidence shows that decedent wrote the electronic note and that it was not altered by anyone else. Contrary to Jones's arguments, the trial court did not clearly err by concluding that the electronic note was written by decedent.

words to family members, discussing hopes for salvation, and disposing of property after death was a will); *In re Fowle's Estate*, 292 Mich at 504 (concluding that instrument disposing of property and making provision for burial was a will). Specifically, decedent was clear that he did not want his mother to receive the remains of the trust fund. Decedent stated that the money in his trust fund was for his half-sister and he wanted his uncle to receive any of his personal belongings that came from his father and grandmother. He left his car to "Jody." All of decedent's "other stuff" was left to the couple with whom decedent had been living.[6] In short, the note is "distinctly testamentary in character," *In re Fowle's Estate*, 292 Mich at 504, and the document itself provides support for the conclusion that decedent intended for the note to constitute his will.[7]

Extrinsic evidence may also be used to discern a decedent's intent, *In re Estate of Attia*, 317 Mich App at 709, and considering the evidence presented at the hearing, we see no clear err in the trial court's findings of fact regarding the circumstances surrounding decedent's death and decedent's intent for the electronic note to constitute his will. In this regard, as detailed by the trial court, the evidence showed that decedent's handwritten journal entry directed the reader to an electronic, final "farewell." Decedent left his journal and his phone containing the electronic note in his room; he then left the home and committed suicide. Given the surrounding circumstances, although the note was undated, the trial court reasonably concluded that the electronic note was written "in anticipation of [decedent's] imminent death by his own hands." The fact that decedent wrote a note providing for disposition of his property in anticipation of his impending death supports the conclusion that it was a final document to govern the disposition of decedent's property after his death. Cf. *In re High*, 2 Doug at 517-519, 521-522. Moreover, the evidence showed that decedent had, at best, a strained relationship with his mother, and the trial court reasoned that Jones's testimony regarding her strained relationship with decedent "actually provides an understanding of the intent of [decedent] when he drafted the cell phone document."

---

[6] On appeal, Jones argues that decedent's suicide note contains precatory language, and, relying on *Crisp v Anderson*, 204 Mich 35, 39; 169 NW 855 (1918), Jones argues that language such as "if at all possible" is insufficient to demonstrate testamentary intent. The probate court rejected this argument, correctly recognizing that decedent used unequivocal language when he used the phrase "not my mother" and when he stated to his half-sister that "all of my money . . . is yours." Decedent also clearly stated that anything belonging to his grandmother or father was to be given to his uncle that his car was for "Jody," and that all decedent's "other stuff" was for the couple with whom he had been living. In short, contrary to Jones's argument, decedent clearly provided for the disposition of his property following his death.

[7] In disputing the note's validity as a will, Jones specifically emphasizes that the electronic note does not contain a handwritten signature and Jones asserts that the document should simply be viewed as an informal "note" rather than a "will." However, as discussed, the formalities of MCL 700.2502 are not required for a valid will under MCL 700.2503. *In re Estate of Attia*, 317 Mich App at 711. Moreover, we note that, although the electronic note does not contain a handwritten signature, decedent ended the document with the more formal use of his full name—"Duane F. Horton II," which added an element of solemnity to the document, supporting the conclusion that the document was intended as more than a casual "note."

In other words, the nature of decedent's relationship with his mother, when read in conjunction with his clear directive that none of his money go to his mother, supports the conclusion that decedent intended for the electronic note to govern the posthumous distribution of his property to ensure that his mother, who would otherwise be his heir, did not inherit from him. We see no clear error in the trial court's factual findings, *In re Koehler Estate*, 314 Mich App at 673-674, and the extrinsic evidence in this case strongly supports the conclusion that decedent intended the electronic note to constitute his will.

Overall, considering both the document itself and the extrinsic evidence submitted at the hearing, the trial court did not err by concluding that GAI presented clear and convincing evidence that decedent intended the electronic note to constitute his will, and thus the document constitutes a valid will under MCL 700.2503.

Affirmed. Having prevailed in full, GAI may tax costs pursuant to MCR 7.219.


/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Jane E. Markey