*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* ESTATE OF JAMES HENRY KAYUK.

---

THOMAS MARTIN KAYUK,

      Appellant,

v

CHRISTINE CLAIRE and WILLIAM J. MONAGHAN, Personal Representative of the ESTATE OF JAMES HENRY KAYUK,

      Appellees.

UNPUBLISHED
March 28, 2019

No. 342313
Macomb Probate Court
LC No. 2017-222707-DE

---

Before: O'BRIEN, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this probate contest between siblings, appellant, Thomas Kayuk (Thomas),[1] appeals as of right the probate court's order declaring his brother, James Henry Kayuk (decedent), to have died intestate. We affirm.

## I. FACTS

This case arises out of the death of decedent on November 24, 2016, and the disputed validity of a will that he purportedly executed in 1993 (the 1993 will). After decedent's death, an unsigned and undated copy of a will was found; the only indication of when it was created is that the year 1993 appears in the document. Thomas is the only surviving beneficiary under the 1993 will, which also named Thomas as decedent's personal representative and explicitly disinherited decedent's sister, appellee Christine Claire (Christine). After decedent's death,

---

[1] The Kayuk siblings will be referred to by their first names throughout this opinion.

Thomas brought forward the copy of the 1993 will and attempted to have it enforced as decedent's last will and testament. Christine objected, arguing that the 1993 will should not be admitted to probate.

Thomas asserts that the 1993 will should be admitted to probate based on an incident that occurred in 2012, during which most of the contents of decedent's condominium were damaged. On March 25, 2012, decedent's friends and family threw away a large amount of garbage and debris that included, over decedent's objections, a great deal of ruined paperwork. Decedent's lawyer testified that his normal practice was not to allow an unsigned copy of a prepared will to leave his office unless the testator had also properly executed a copy of the will. The theory, therefore, is that the 1993 will reflects a properly executed will that was inadvertently destroyed contrary to decedent's intent in 2012. The lawyer did not recall the 1993 will specifically.

Following an evidentiary hearing, the probate court held that the 1993 will was invalid. Thus, the court entered the order, holding that decedent died intestate.[2] This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a probate court's factual findings for clear error. *In re Koehler Estate*, 314 Mich App 667, 673-674; 888 NW2d 432 (2016). A finding is clearly erroneous "when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). Questions of statutory interpretation are reviewed do novo. *In re Reisman Estate*, 266 Mich App 522, 526; 702 NW2d 658 (2005).

## III. ANALYSIS

On appeal, Thomas argues that the probate court erred by ruling that decedent had died intestate. We disagree.

In a case over a contested will, "the proponent of a will bears 'the burden of establishing prima facie proof of due execution.' " *In re Horton Estate*, 325 Mich App 325, 330; ___ NW2d ___ (2018) (quoting MCL 700.3407(1)(b)). The Estates and Protected Individuals Code (EPIC) permits admission of extrinsic evidence to "determine whether the decedent intended a document to constitute his or her will." *In re Attia Estate*, 317 Mich App 705, 709; 895 NW2d 564 (2016). MCL 700.2502 establishes the general requirements for a valid will under EPIC and requires, among other things, that a will be "[s]igned by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction." *Id*. at 711 (quotation marks and citation omitted). A will that is unsigned may still be valid under MCL 700.2503, however, as long as the document is in writing and "the proponent of the will presents clear and convincing evidence to establish that the decedent intended the document to constitute his or her will." *Horton*, 325 Mich App at 333; accord *Attia*, 317 Mich App at 711. "The clear

---

[2] The probate court appointed attorney appellee William J. Monaghan (Monaghan) as personal representative of decedent's estate.

and convincing evidence standard presents a heavy burden that far exceeds the preponderance of the evidence standard that is sufficient for most civil litigation." *Heindlmeyer v Ottawa Co Concealed Weapons Licensing Bd*, 268 Mich App 202, 224; 707 NW2d 353 (2005).

Because the only copy of the 1993 will is unsigned and undated, it is not a valid will under MCL 700.2502 and may only be admitted to probate under MCL 700.2503 if Thomas can establish by clear and convincing evidence that decedent intended the 1993 will to constitute his will. See *Horton*, 325 Mich App at 333. The trial court properly concluded that Thomas had not done so.

Thomas relies on *Attia* for his argument that the 1993 will is valid despite the absence of decedent's signature. In *Attia*, the decedent properly executed a valid will and codicils before his death. *Attia*, 317 Mich App at 706-707. The appellant argued that the decedent had recently changed his estate plan prior to his death and asked his lawyer to draw up a new will that was scheduled to be executed on the day the decedent died. *Id*. at 707. The appellant sought to have this unsigned will admitted to probate. *Id*. On appeal, this Court construed MCL 700.2503 and held that an unsigned will can be probated "as long as the proponent of the document in question establishes by clear and convincing evidence that the decedent intended the document to be a will." *Id*. at 711. This Court reasoned that to prevent all unsigned wills from ever being probated "would render MCL 700.2503 inapplicable to the testamentary formalities in MCL 700.2502, which is contrary to the plain language of the statute." *Id*. Importantly, in *Attia*, this Court did not rule on whether the unsigned will in *Attia* should be probated, instead reversing and remanding for the trial court to answer that question. *Id*. at 713.

After a hearing in the present case, the probate court held that there was not clear and convincing evidence that the 1993 will was in fact decedent's will and that the testimony was "speculative." The probate court based this decision on the fact that decedent's lawyer could not say with any certainty that decedent actually signed the 1993 will before leaving the lawyer's office with the unsigned copy. Decedent's lawyer could only testify as to his normal practice and how an unsigned will would typically leave his office. He had no specific memories of writing the 1993 will for decedent or of meeting with decedent in 1993 about writing a will for him. The probate court acknowledged that there was "mayhem" at decedent's residence surrounding the 2012 incident, but it found more probative that the 1993 will did not come from decedent's lawyer himself but rather from Thomas, further the court found that there was no evidence that the 1993 will, even if properly executed, had not been revoked by decedent at some other time.

After reviewing the record, we agree with the probate court. Additionally, there was also little evidence regarding decedent's testamentary intentions. Thomas was aware of the general contents of the 1993 will and claimed it "blew [his] mind" by how accurately the 1993 will reflected decedent's purported testamentary intent. In contrast, the purported 1993 will does not mention decedent's cats or tools, contrary to testimony from one of decedent's friends regarding decedent's testamentary intent regarding who would receive his cats and his tools. Furthermore, Monaghan and Christine were both unaware that decedent had a will. Given the high burden of "clear and convincing evidence," we conclude that the probate court correctly found that Thomas had failed to sufficiently establish that the 1993 will reflected decedent's testamentary intent or that it was ever actually executed.

Moreover, when the original version of a will cannot be found and it was last known to be in the testator's possession, a rebuttable presumption arises that the will was destroyed with the intent to revoke it. *In re Christoff Estate*, 193 Mich App 468, 473; 484 NW2d 743 (1992); accord *In re Smith Estate*, 145 Mich App 634, 637; 378 NW2d 555 (1985).[3] Presuming Thomas had proved by clear and convincing evidence that decedent ever executed the 1993 will, Thomas has failed to overcome the presumption of revocation. It is possible that the 1993 will was inadvertently destroyed during the 2012 incident. However, presumptions may generally only be overcome by evidence, not by mere possibilities. See *In re Mercure's Estate*, 391 Mich 443, 451-452; 216 NW2d 914 (1974); *Michigan Aero Club v Shelley*, 283 Mich 401, 410; 278 NW 121 (1938).

The only individual to testify that decedent ever mentioned even having a will was Thomas and he was both the proponent of the will and the individual who would inherit everything under it. There is no evidence that decedent ever mentioned the 1993 will to anyone else. Monaghan, who served as decedent's guardian before decedent's death, only ever heard of the 1993 will's existence from Thomas. The probate court correctly observed that "there's no evidence whatsoever that [the 1993 will] had not been revoked." This factual finding can only be reversed for clear error, and we are not "left with a definite and firm conviction that a mistake has been made." As such, Thomas failed to rebut the presumption in favor of revocation, and the probate court properly held that the 1993 will could not be admitted to probate.

## IV. CONCLUSION

Thomas failed to provide clear and convincing evidence that the 1993 will reflected decedent's testamentary intent, and even if he had, Thomas failed to overcome the presumption of revocation by destruction. Therefore, we affirm. Appellees, being the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause

---

[3] *Christoff Estate* and *Smith Estate* were both decided before EPIC was enacted. See 1998 PA 386. However, the parties have not cited any provision of EPIC that alters the common-law rule concerning the presumption of revocation, nor are we aware of any such provision. Indeed, the Legislature "is presumed to be aware of judicial interpretations of existing law when passing legislation" and, absent clear legislative intent to the contrary, to leave the common law intact. *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 124-125; 888 NW2d 295 (2016) (quotation marks and citation omitted).