*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF NEAL D. NIELSEN.

---

THOMAS A. MATTHEWS, Personal Representative of the ESTATE OF NEAL D. NIELSEN, SCOTT NIELSEN, and CHRISTOPHER NIELSEN,

      Appellees,

v

PAULA A. NIELSEN,

      Appellant.

FOR PUBLICATION
April 27, 2026
12:08 PM

No. 368054
Livingston Probate Court
LC No. 2021-019876-DE

---

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

GARRETT, P.J.

Decedent, Neal D. Nielsen, died on December 12, 2020. Although Neal and appellant Paula A. Nielsen were married at one point, they divorced on July 5, 2000, more than 20 years before Neal's death. After the divorce, Neal executed a last will and testament, leaving certain personal property to Paula. This appeal concerns whether the bequests to Paula constitute a "general" or "specific" devise under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. If the devise was a specific devise and Neal's estate is "otherwise sufficient" as stated in MCL 700.2405, Neal's children may not select items from the devise as part of their exempt-property allowance under MCL 700.2404. The probate court ruled in favor of Neal's children and determined that the devise was a general devise. The probate court also ruled in favor of Neal's children with respect to Paula's life insurance policy and Neal's vehicles. Paula appeals by right the probate court's order. For the reasons discussed in this opinion, we conclude that Neal's devise of personal property was a specific devise rather than a general devise. In all other respects, we affirm the probate court's decision. We therefore affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL BACKGROUND

-1-

At the time of his death, Neal had three adult children: Christie Ackroyd and appellees Christopher Nielsen and Scott Nielsen. It is unclear from the record when Neal married Paula, but it appears that Paula was the children's stepmother for a period of time during their youth and for a substantial amount of time afterward. Neal and Paula divorced on July 5, 2000, but the children were unaware of the divorce, and Neal and Paula continued to live together, seemingly as husband and wife, until Neal died. On July 25, 2001, Neal executed a last will and testament. The fifth article of the will bequeathed categories of personal property to Paula and stated as follows:

I give, devise and bequeath my household furniture and furnishings, automobiles, books, pictures, jewelry, art objects, hobby equipment and collections, wearing apparel, and other articles of household or personal use or ornament (together with any assignable insurance policies thereon), but excluding coins held for investment and paper currency, to my wife,[1] PAULA A, NIELSEN.

In the event that my wife, PAULA A. NIELSEN, should predecease me, then I give, devise and bequeath my household furniture and furnishings, automobiles, books, pictures, jewelry, art objects, hobby equipment and collections, wearing apparel, and other articles of household or personal use or ornament (together with any assignable insurance policies thereon), but excluding coins held for investment and paper currency equally, share and share alike, to my then living children, CHRISTOPHER M. NIELSEN, CHRISTIE A. NIELSEN, and SCOTT NIELSEN, or to the survivors among them.

All of the rest, residue, and remainder [of] my estate, of whatsoever nature and wheresoever situated, shall pour over into my trust, the NEAL D. NIELSEN FAMILY TRUST AGREEMENT DATED APRIL 15,1997 AS AMENDED AND RESTATED, which I have already created.

I may leave a memorandum (which is not to be a part of this will) either entirely in my handwriting or signed in my handwriting at the end, listing specific items of personalty that I wish certain persons to have, consistent with MCLA 700.2513, and direct that my wishes as set forth in the memorandum be observed.

All lapsed gifts or any failed devises shall become a part of the residuary.

Neal died on December 12, 2020.

Appellee Thomas A. Matthews, successor personal representative of Neal's estate, petitioned the trial court to approve his interpretation of Neal's will and his proposed distribution of the devised property. He asserted that the fifth article of the will constituted a specific devise because the bequests (1) involved specific categories of property intended for a specific person, (2) were not paid from the estate's residuary or general funds, (3) were worth less than $60,000 in an estate of $1.3 million, and (4) were items that Neal intended Paula to receive. Matthews

---

[1] Notwithstanding that Neal and Paula were divorced when he executed his will, he referred to Paula as his wife in his will.

maintained that Neal's children were entitled to claim a total of $16,000 worth of property from the estate but could not select the property specifically devised to Paula. Matthews also asserted that Paula was entitled to $9,100 in insurance proceeds that State Farm Insurance Company (State Farm) paid after the total loss of Neal's Chevrolet Silverado that was involved in an accident a few weeks before Neal's death. Matthews maintained that Paula was entitled to the funds because Neal bequeathed his vehicles to Paula, the insurance claim was unpaid when Neal died, and the nonademption statute, MCL 700.2606, applied.

In addition, Matthews argued that a Ford F-150 pickup truck was owned by Ajax Leasing, LLC (Ajax Leasing), one of Neal's companies, and was therefore not an estate asset. Regarding Neal's University of Michigan memorabilia, gun collection, and furniture, Matthews maintained that those items were included in the specific devise to Paula. Finally, Matthews asserted that a life insurance policy insuring Paula's life was not an estate asset because it was awarded to Paula in the divorce proceeding in 2000.

Christopher responded that the fifth article in Neal's will was a general devise rather than a specific devise because it did not give specific items to Paula and instead devised general categories of personal property. He asserted that the exclusion of cash and coins along with Neal's indication that he might leave a signed memorandum granting specific items to specific people evidenced that the devises to Paula were general devises. In support of his argument, Christopher relied on the definition of "specific devise" in *Black's Law Dictionary* and *In re Guise Estate*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2019 (Docket No. 344217), which he maintained held that a specific devise must pass a specific piece of property to a specific individual. Alternatively, Christopher argued that, even if the devise to Paula was a specific devise, the children were permitted to select items from the devise to fulfill their exempt-property allowance because Neal bequeathed all his tangible personal property to Paula, and the estate was therefore insufficient for the children to select from nonspecifically devised property. In particular, Christopher wanted his childhood bedroom furniture, which remained in Neal's home so Christopher would have a place to sleep when he visited overnight. Scott generally agreed with Christopher.

Paula argued that the fifth article of Neal's will constituted a specific devise to her of the items named. She maintained that the children could not fulfill their exempt-property allowance by taking specifically devised property, as stated in MCL 700.2405(1), because the estate contained other assets that could be used to satisfy the exempt-property allowance, including Neal's coin collection, more than $600,000 in cash, and assets belonging to Neal's two law practices. She also argued that the children were not entitled to any exempt property because they failed to timely assert their right to their exempt-property allowance.

Regarding the State Farm insurance proceeds in the amount of $9,100, Paula argued that she was entitled to the funds because Neal specifically devised his automobiles to her, and the proceeds were paid via a check payable to Neal because of the total loss of his Chevrolet Silverado. With respect to the Ford F-150 pickup truck, Paula asserted that Matthews had failed to provide sufficient information to determine whether it was an estate asset. She maintained that it was unclear whether Neal's interest in Ajax Leasing had been held in his name individually or in the name of his trust and that it was therefore unclear whether the vehicle was an estate asset. Paula argued that the University of Michigan memorabilia, furniture, and firearms were included in

Neal's specific devise to her and that the insurance policy insuring her life was not an estate asset because it was awarded to her in the divorce settlement. Finally, Paula maintained that *Guise Estate* was distinguishable because that case involved a will provision very different from the fifth article in Neal's will. Christie generally agreed with Paula.

The probate court determined that the fifth article of Neal's will constituted a general devise. Relying on *Black's Law Dictionary* and *Guise Estate*, the court stated that a specific devise concerns "a particular piece of property" in contrast with a general devise, which is defined as "a specific amount of money or quantity of property . . . without specifically enumerating or describing" the property. The court opined that the language of the fifth article bequeathing categories of property was "very general," and Neal indicated he might leave a memorandum listing "particular pieces" of property that he wanted certain persons to have, indicating that the categories of property constituted a general devise.

Regarding the life insurance policy, the probate court determined that it was undisputed that Neal's law practice owned the policy, and it was therefore an asset of Neal's trust. The court determined that the insurance proceeds for the Chevrolet Silverado[2] were an asset of Neal's estate because the Silverado had not been specifically devised to Paula and was instead part of the general devise to her. In addition, the court determined that the Ford F-150 was "owned by the LLC" and was therefore an asset of Neal's trust. Finally, the court determined that Neal's gun collection constituted hobby equipment, which was part of the general devise, and that the bedroom furniture and Neal's University of Michigan memorabilia were likewise included in the general devise.

The probate court entered a written order in accordance with its oral ruling. Thereafter, Paula filed this appeal.

## II. STANDARDS OF REVIEW

We review de novo the interpretation of statutes and the probate court's interpretation of a will. *In re Horton Estate*, 325 Mich App 325, 329; 925 NW2d 207 (2018). We review for clear error the probate court's factual findings and review for an abuse of discretion its dispositional rulings. *In re Jajuga Estate*, 312 Mich App 706, 711; 881 NW2d 487 (2015). "A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *In re Huntington Estate*, 339 Mich App 8, 17; 981 NW2d 72 (2021) (quotation marks and citation omitted). A court abuses its discretion when its decision falls outside the range of principled outcomes or when it makes an error of law. *Id*.

## III. ANALYSIS

### A. ITEMS DEVISED IN THE WILL

In Michigan, EPIC governs a testator's right to bequeath property in a will. *Horton Estate*, 325 Mich App at 330. The provisions of EPIC "shall be liberally construed and applied to promote

---

[2] Although the probate court referred to the Silverado as a Suburban, there is no dispute that the court was referencing the Silverado.

its underlying purposes," which include discovering and giving effect to the decedent's intent in distributing their property. MCL 700.1201(b). Under MCL 700.2606(1), "[a] specific devisee has a right to the specifically devised property in the testator's estate at death . . . ." The term "devise" "means, when used as a noun, a testamentary disposition of real or personal property and, when used as a verb, to dispose of real or personal property by will." MCL 700.1103(m). A "devisee" is "a person designated in a will to receive a devise." MCL 700.1103(n).

Under MCL 700.3101, "[a]n individual's power to leave property by will, and the rights of creditors, devisees, and heirs to his or her property, are subject to the restrictions and limitations contained in [EPIC] to facilitate the prompt settlement of estates." That provision further states, "Upon an individual's death, the decedent's property devolves to the persons to whom the property is devised by the decedent's last will . . . subject to homestead allowance, family allowance, and exempt property, to rights of creditors, to the surviving spouse's elective share, and to administration." Accordingly, although the probate court's role when interpreting a will is to ascertain and give effect to the testator's intent as expressed in the language of a will, *In re Stan Estate*, 301 Mich App 435, 442; 839 NW2d 498 (2013), "an individual's power to leave property by will is subject to the exempt property provisions" of EPIC, *Jajuga Estate*, 312 Mich App at 715, among other provisions of the code.

MCL 700.2402 of EPIC provides a homestead allowance, and MCL 700.2403 provides a family allowance. MCL 700.2404 provides an exempt-property allowance and states, in relevant part:

> (1) The decedent's surviving spouse is also entitled to household furniture, automobiles, furnishings, appliances, and personal effects from the estate up to a value not to exceed $10,000.00 more than the amount of any security interests to which the property is subject. *If there is no surviving spouse, the decedent's children who are not excluded under subsection (4) are entitled jointly to the same value*.

> (2) If encumbered assets are selected and the value in excess of security interests, plus that of other exempt property, is less than $10,000.00, *or if there is not $10,000.00 worth of exempt property in the estate, the spouse or children who are not excluded under subsection (4) are entitled to other assets of the estate, if any, to the extent necessary to make up the $10,000.00 value. . . .*

> (3) The rights under this section are in addition to a benefit or share passing to the surviving spouse or children by the decedent's will, unless otherwise provided, by intestate succession, or by elective share. The $10,000.00 amount described in this section must be adjusted as provided in [MCL 700.1210].[3]

---

[3] MCL 700.1210 provides a cost-of-living adjustment applicable to MCL 700.2404. It is undisputed that the exempt-property allowance in 2020 when Neal died was $16,000.

(4) The decedent may exclude 1 or more of the decedent's children from receiving exempt property or assets to make up a deficiency of exempt property under subsection (1) . . . . [Emphasis added.]

"If the estate is otherwise sufficient, property specifically devised shall not be used to satisfy rights to homestead allowance or exempt property." MCL 700.2405(1).

Although EPIC defines the term "devise," it does not define "specific devise" or "general devise." "All matters of statutory interpretation begin with an examination of the language of the statute." *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018). When interpreting a statute, this Court's goal is to give effect to the intent of the Legislature. *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 333; 999 NW2d 423 (2023). The language of the statute itself is the most reliable indication of the Legislature's intent. *Farris v McKaig*, 324 Mich App 349, 353; 920 NW2d 377 (2018). If the Legislature used terms that are not defined in the statute, this Court may consult a dictionary to determine the meaning of the terms. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). While courts consult a lay dictionary to determine the meaning of "a common word or phrase that lacks a unique legal meaning," courts interpret a legal term of art "in accordance with its peculiar and appropriate legal meaning." *Sanford v State*, 506 Mich 10, 21 n 19; 954 NW2d 82 (2020) (quotation marks and citation omitted). "Moreover, when the Legislature chooses to employ a common-law term without indicating an intent to alter the common law, the term will be interpreted consistent with its common-law meaning." *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).

When the Legislature enacted EPIC in 1998,[4] the terms "general devise" and "specific devise" had common-law meanings. In *In re Corby's Estate*, 154 Mich 353, 354; 117 NW 906 (1908), the testator's will provided, in relevant part:

I give to my beloved brother Thomas Corby of Grosse Pointe, Michigan, my double brick houses in the City of Detroit, located at No. 83 and 85 Winder Street, my household furniture and all the rest of my property of every kind and nature whatever.

The testator also bequeathed $2,000 each to three nephews and one niece. *Id*. Our Supreme Court determined that the gifts of $2,000 were general devises, and the gifts of furniture and land were specific devises:

The legacies to the nieces and nephews were general legacies. The devise of the land to the brother was specific, and the gift of household furniture was a specific legacy. The general residuary clause "of all the rest of my property of every kind and nature whatever" added to this paragraph does not affect the character of the devise and legacy to him. [*Id*. at 355.]

---

[4] 1998 PA 386, effective April 1, 2000.

In *Morrow v Detroit Trust Co*, 330 Mich 635, 638, 644; 48 NW2d 136 (1951), our Supreme Court discussed whether shares of stock worth $25,000 constituted a general or specific devise. The Court stated:

> [T]he language of the bequest is not controlling. The entire instrument is to be examined, and if upon the whole it clearly appears that the testator intended to dispose of *his* stock the legacy will be regarded as specific. If in the clause the testator had referred to the stock as "my" or "now in my possession" or "now owned by me" or like words of identification the bequest would have been specific according to all accepted authority. And if similar expressions are found in the rest of the will, referable to and inclusive of the bequest, it is specific. [*Id*. at 644 (quotation marks and citation omitted).]

The Court further stated:

> A general legacy is one which is payable out of the general assets of the testator. A legacy is specific when it is the testator's intention that the legatee shall have the very thing bequeathed and not a corresponding amount in value. A demonstrative legacy partakes of the nature of both a general and a specific legacy. It is a gift of money payable out of a particular fund in such a way as to evince the testator's intent not to relieve his general estate from payment of the legacy in case the particular fund fails. The distinction between demonstrative legacies and specific legacies is that in the former the primary intention is that the legacy be paid in any event, even though the designated source fails, while in the latter the main intention is that the legacy be paid by the delivery of the identical thing, and that thing only, and in the event that at the time of the testator's death such thing is no longer in existence, the legacy will not be paid out of his general assets. [*Id*. at 644-645 (quotation marks and citation omitted).]

> \* \* \*

> A specific legacy is a gift of a specific thing, or of some particular portion of the testator's estate, which is so described by the testator's will as to distinguish it from other articles of the same general nature. A specific legacy differs from a general legacy in that it is not intended by testator to be paid out of his estate generally, but is to be paid solely by delivering to the beneficiary the specific thing given by will, as distinguished from a designated value, quantity, and the like. [*Id*. at 645 (quotation marks and citation omitted).]

The common-law meanings of general and specific devises are consistent with the dictionary definitions of those terms. *Black's Law Dictionary* (12th ed) defines "general devise" as "[a] devise, usu. of a specific amount of money or quantity of property, that is payable from the estate's general assets." It defines a "specific devise" as "[a] devise that passes a particular piece of property."

In this case, Neal did not devise to Paula a quantity of property payable from his estate's general assets. Rather, he bequeathed to Paula specific items and used the term "my" preceding

the list of items he left Paula. As recognized in *Morrow*, 330 Mich at 644, the word "my" is indicative of a specific devise. Moreover, nothing indicates that Neal intended Paula to receive something of equal value in lieu of the items listed. The fact that the items were listed in categories does not indicate that the devises were general instead of specific. Our Supreme Court recognized in *Morrow*, 330 Mich at 645, that a specific devise includes "a specific thing" or "some particular portion of the testator's estate." Rather than listing all his belongings individually, Neal described his personal property in categories, such as his "household furniture," "wearing apparel," and "hobby equipment and collections." As stated in *Corby's Estate*, 154 Mich at 355, "the gift of household furniture was a specific legacy." Accordingly, we conclude that the items Neal bequeathed to Paula constituted specific devises and reject Paula's contention that the will is ambiguous regarding whether the devises were specific or general.

It appears from Neal's will that he intended Paula to have all his personal property included in the categories of items he left her. Although the will states that Neal "may leave a memorandum" gifting specific items to certain persons, as contemplated under MCL 700.2513, he did not do so. Further, the will states that if Paula predeceased Neal, then Neal's children shall have the same categories of items that Neal left Paula. Therefore, it is apparent that Neal intended his children to have the property he left Paula only if she predeceased him.

The probate court's reliance on *Guise Estate* was misplaced. That case concerned a will provision that stated:

> Andrew Guise and Susan Null shall sort through all of the household goods, antiques, tools, and all other items of personal property and identify those items which shall stay within the Guise and Knapp family. Those items identified shall be distributed to members of those families, with the exception of Rhonda Duchette and Bob Guise. Neither of these individuals shall take from my estate and are being purposely omitted. [*Guise Estate*, unpub op at 2.]

This Court was asked to consider whether this provision was a specific devise or a general devise. *Id*. at 5. We determined that the devise was a general devise and that the "postmortem sorting and identification process" confirmed that the decedent did not intend for particular items of property to pass to specific devisees. *Id*. at 6. Because the instant case involves a will provision that left certain items to Paula and does not involve a sorting process similar to *Guise Estate*, we do not find that case particularly helpful or persuasive.[5]

Although the probate court erroneously determined that the fifth article of Neal's will was a general devise rather than a specific devise, the court properly determined that Neal's gun collection constituted hobby equipment as stated in the fifth article. In addition, we conclude that Neal's University of Michigan memorabilia constituted a "collection" as stated in the fifth article. The fifth article also devised to Paula "automobiles," but because Neal's Chevrolet Silverado was involved in an accident a few weeks before his death, State Farm paid him $9,100 in insurance

---

[5] Unpublished opinions of this Court are not precedentially binding, MCR 7.215(C)(1), but they may be instructive or persuasive. *Patel v FisherBroyles, LLP*, 344 Mich App 264, 276 n 4; 1 NW3d 308 (2022).

proceeds for the vehicle and did not issue the check until after Neal died. Because the Silverado was specifically devised property, Paula is entitled to the insurance proceeds under MCL 700.2606(1)(c), which states that "[a] specific devisee has a right to the specifically devised property" and "[a]ny proceeds unpaid at death on fire or casualty insurance on, or other recovery for, injury to the property." Finally, Neal's will specifically devised to Paula "household furniture," which includes bedroom furniture. Accordingly, if Neal's estate is otherwise sufficient as stated in MCL 700.2405(1), Paula is entitled to the gun collection, University of Michigan memorabilia, insurance proceeds in the amount of $9,100, and the bedroom furniture.[6]

MCL 700.2405 provides, in relevant part:

(1) If the estate is otherwise sufficient, property specifically devised shall not be used to satisfy rights to homestead allowance or exempt property. Subject to this restriction, the surviving spouse, fiduciaries or others that have the care and custody of minor children, or children who are adults may select property of the estate as homestead allowance and exempt property.

(2) The personal representative may make those selections if the surviving spouse, the adult children, or those acting for the minor children are unable or fail to do so within a reasonable time. . . .

(3) The personal representative or an interested person aggrieved by a selection, determination, payment, proposed payment, or failure to act under this section may petition the court for appropriate relief . . . .

Under MCL 700.2405(1), if Neal's estate is "otherwise sufficient," the children are not entitled to select property specifically devised to Paula to fulfill their exempt-property allowance. Because the probate court did not determine whether Neal's estate was otherwise sufficient, we remand this case to the probate court to make that determination. Further, we disagree with Paula's contention that the children waived their right to their exempt-property allowance by failing to timely assert the right. MCL 700.2405 does not provide a limitations period for asserting a right to exempt property. In fact, MCL 700.2405(2) authorizes the personal representative to select exempt property if persons entitled to such property "fail to do so within a reasonable time." Accordingly, Paula's argument that the children waived their claim to exempt property lacks merit.

B. LIFE INSURANCE POLICY

Paula also argues that the probate court erred by failing to consider Neal and Paula's property settlement agreement as it pertains to ownership of the life insurance policy insuring her life. We conclude that the probate court did not clearly err by determining that the life insurance policy is an asset of Neal's trust.

---

[6] We mention these items specifically because Paula and one or more of the children seek these particular items.

On December 24, 1986, Neal D. Nielsen, PC submitted a life insurance application for a $50,000 policy insuring Paula's life. The application was approved, and State Farm issued the policy. In 2000 when Neal and Paula divorced, they entered into a property settlement that granted Neal "business assets and ownership interest in Neal D. Nielsen, P.C. (with exception of its pension and profit sharing plans described . . . below, and with further exception of the Ameritrade accounts listed below which Paula Nielsen will receive)." The life insurance policy was an asset of Neal D. Nielsen, PC. After Neal's death, the children transferred ownership of the policy to Neal's trust.

Paula asserts that the probate court failed to consider that the property settlement agreement granted Paula "[l]ife insurance policies insuring her life" and required Neal and Paula to sign any documents necessary to transfer assets to the other party. She claims that she is entitled to the policy under the terms of the property settlement agreement. Because the agreement awarded Neal the assets of Neal D. Nielsen, PC and awarded Paula life insurance policies insuring her life, the property settlement agreement is arguably ambiguous regarding whether Neal or Paula received the life insurance policy in the divorce. But Paula failed to take any action to assert her claim to the policy for more than 20 years after the divorce and before Neal died. "[C]laims relating to a property settlement contained in a judgment of divorce . . . are subject to the 10-year period of limitations set forth in MCL 600.5809(3)." *O'Leary v O'Leary*, 321 Mich App 647, 653; 909 NW2d 518 (2017). Paula maintains that the limitations period was tolled because Neal fraudulently concealed the policy, and she was unaware of its existence. However, that argument is belied by Paula's signature on the policy application. Accordingly, to the extent that the property settlement agreement entitled Paula to the policy, we conclude that she failed to timely assert her claim and uphold the probate court's determination that the policy is an asset of Neal's trust.

## C. FORD F-150

Finally, Paula argues that she is entitled to the Ford F-150 that was owned by Neal's company, Ajax Leasing. The probate court properly determined that the F-150 is an asset of Neal's trust. A membership interest in an LLC "is personal property and may be held in any manner in which personal property may be held." MCL 450.4504. Ajax Leasing was titled solely in Neal's name when he died. The fifth article of Neal's will devised items of personal property to Paula and stated, "All of the rest, residue, and remainder [of] my estate, of whatsoever nature and wheresoever situated, shall pour over into my trust . . . ." Therefore, Neal's membership interest in Ajax Leasing poured over into his trust, and Ajax Leasing owned the F-150. Paula's argument that she is entitled to the F-150 because Neal bequeathed to her his automobiles disregards Ajax Leasing's separate corporate identity and the fact that Ajax Leasing, rather than Neal individually, owned the F-150. Accordingly, the probate court properly determined that Neal's trust owns the F-150.

## IV. CONCLUSION

The probate court erred by determining that the fifth article of Neal's will constituted a general devise rather than a specific devise. Because the devise was specific, the children may not select items from the devise to fulfill their exempt-property allowance if Neal's estate is "otherwise sufficient" as stated in MCL 700.2405(1). We remand this case to the trial court to make that

determination.  Further, we conclude that the probate court properly determined that the life insurance policy insuring Paula's life and the Ford F-150 are assets of Neal's trust.

Affirmed in part, reversed in part, and remanded.  We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney