*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF LEROY EDWARD MURRAY.

MELVIN JEFFERSON, Personal Representative of
the ESTATE OF LEROY EDWARD MURRAY,
and ALECHA BENSON,

UNPUBLISHED
March 9, 2023

Appellees,

v

No. 357107
Wayne Probate Court

SANDRA MACK MURRAY,

LC No. 2019-848363-DE

Appellant.

Before: CAVANAGH, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

The decedent, Leroy Edward Murray, died in 2019, survived by six adult children. His daughter, appellee Alecha Benson, was appointed special personal representative of his estate and filed a petition to determine the decedent's heirs after appellant Sandra Mack Murray claimed to be the decedent's surviving spouse. Mack Murray also petitioned to determine title to the decedent's residence, claiming that a quitclaim deed conveying the property to decedent's son was forged. Following a four-day evidentiary hearing, the probate court held that a purported marriage between the decedent and Mack Murray was invalid, leaving the decedent's children as his only heirs. Because Mack Murray was not the decedent's surviving spouse, the court dismissed her petition challenging the validity of the quitclaim deed for lack of standing.

Mack Murray appeals from these rulings. Considering the totality of the evidence, we conclude that the probate court did not err by finding that the marriage between the decedent and Mack Murray was invalid. Thus, Mack Murray was not the decedent's surviving spouse or an heir to his estate, so we agree with the probate court that she lacked standing to challenge the validity of the deed. We affirm.

-1-

## I. BACKGROUND

Mack Murray and the decedent began dating in 2015 or 2016. In October 2016, the couple obtained a marriage license from the Wayne County Clerk's Office, which stated that their marriage "must be solemnized in the State of Michigan on or before November 25, 2016." It is undisputed that the couple did not marry by this date. Rather, on November 26, 2016, the couple participated in a wedding ceremony performed by a pastor and attended by various friends and relatives, including at least two of decedent's children. A date-stamp on the marriage license reveals that it was filed with the Wayne County Clerk on November 28, 2016.

Following decedent's passing in 2019, Benson was appointed special personal representative of his estate.[1] Benson alleged that in the process of gathering the decedent's assets, Mack Murray claimed that she was the decedent's surviving spouse. In need of judicial intervention, Benson filed a petition asking the probate court to determine the decedent's heirs as of the date of his death. Benson argued that Mack Murray was not the decedent's surviving spouse because their marriage license expired before the ceremony was held and so any marriage was void as a matter of law. The court, Benson reasoned, should determine that the decedent's children were his only heirs. Conversely, Mack Murray requested that the court determine that she was the decedent's surviving spouse.

Mack Murray also filed a petition to determine title to real property. She alleged that after she married the decedent, they resided together at the decedent's home on Chicago Boulevard. She argued that a quitclaim deed conveying that property to the decedent's son, Quinton Murray, was executed in 2014 but not recorded until two days after the decedent's death. Alleging that the deed was forged and invalid, Mack Murray requested that the deed be set aside. In response, Benson explained that the decedent and his late wife intended for Quinton to have their home, and all the siblings were aware of this because of the help Quinton offered his parents. According to Benson, Quinton was instructed not to record the deed until after the decedent died so that a reverse mortgage the decedent obtained against the property in 2009 would not become due. Benson requested that the court find that Quinton rightfully owned the property.

Mack Murray moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that the court should set aside the deed and determine that her marriage to the decedent was valid because the marriage license and certificate were issued, ratified, accepted, and certified by the Wayne County Clerk's Office. The probate court denied the motion because there were genuine issues of material fact about the validity of the deed and Mack Murray's marriage to the decedent. The case proceeded to an evidentiary hearing to determine the decedent's heirs and the validity of the quitclaim deed.

Throughout the evidentiary hearing, conflicting evidence was presented on the parties' intentions about getting married. Jeffrey Murray, another of the decedent's sons, attended the ceremony and testified that it was intended only as a "mock wedding." The decedent told Jeffrey

---

[1] Appellee Melvin Jefferson was later appointed to act as the full personal representative.

that he and Mack Murray intentionally waited until November 26 to have their ceremony because they knew that the marriage license would be expired. According to Jeffrey, the decedent stated that the ceremony was mainly intended to appease Mack Murray by allowing her to "save face" with members of her church. The decedent explained that if they decided later to legalize the marriage, they would obtain the proper paperwork at a later date. Benson similarly testified that the decedent knew that he and Mack Murray would need to legalize the marriage at a later date if they wanted to do so. Conversely, Mack Murray denied that the wedding was intended as a ruse. She admitted that she and the decedent were aware before the ceremony that the license expired before the scheduled wedding date. But she claimed that she and the decedent went to the clerk's office to renew the license, and they were told that it was unnecessary and that the license could be approved after the ceremony. Mack Murray testified that she and the decedent returned to the clerk's office on the Monday after the wedding and the clerk accepted, stamped, and processed the license at that time. The pastor who performed the ceremony and signed the license testified that he did not notice that the license had expired one day before the service.

Tiffany Gerald, the manager for Wayne County's Vital Records Department, which oversees marriage records, confirmed that her department did not have the authority to declare a license that contained inaccurate or incomplete information as invalid. But Gerald testified that if the clerk's office discovered that a solemnization occurred after a license expired, the office would contact the couple to tell them to purchase another license. She also confirmed that an expired license should not be accepted or should be returned to the individual who submitted it. Gerald was not the clerk's office employee working when Mack Murray and the decedent submitted their license, so she could not say what occurred in this case.

Conflicting evidence was also introduced about Mack Murray's conduct following the wedding ceremony and whether her actions were consistent with a legal marriage to the decedent. Benson offered evidence that the decedent and Mack Murray largely lived separate lives after the ceremony, although they may have continued a romantic relationship. Despite Mack Murray's claim that she moved into the decedent's Chicago Boulevard residence after the ceremony, several of the decedent's children testified that they regularly visited the decedent at his house and did not see Mack Murray there. Indeed, Quinton testified that he lived in the home with the decedent and said that Mack Murray would sometimes visit the decedent, but she did not reside there. On the other hand, witnesses called by Mack Murray believed that the couple were living together in the home on Chicago Boulevard because she was there when they visited and she had personal effects at the home. Mack Murray also presented evidence that she was added to the decedent's health insurance coverage with Ford Motor Company after the wedding ceremony.

In addition, the probate court heard evidence that Mack Murray continued to reside at property she occupied before the wedding on Fenelon Street in Detroit, which was subsidized through the Department of Housing and Urban Development (HUD). Mack Murray noted on housing paperwork that she was both "separated"[2] and "married," but she did not identify the decedent as a resident of her Fenelon Street home. Mack Murray also admitted that she continued to file tax returns in which she identified her status as "single" or head of a household that included

---

[2] Mack Murray was recently divorced before her wedding ceremony with the decedent.

only her daughter. She alleged that the decedent told her to file her returns as "single" because he owed money to the Internal Revenue Service (IRS) and wanted to take care of that debt. Mack Murray could not explain why she did not file her returns separately as a married woman. Benson also introduced a record from the Secretary of State, which revealed that Mack Murray changed her address in June 2017 to a different property in Detroit that Mack Murray claimed she inherited from a relative. Mack Murray conceded that she never changed her address with the Secretary of State to the Chicago Boulevard address.

During the evidentiary hearing, Mack Murray also requested that the probate court sanction Quinton's testimony. Quinton had refused to answer questions during his deposition, repeatedly invoking his "right to silence" under the Fifth Amendment. But at the evidentiary hearing, Quinton testified freely about the circumstances surrounding the quitclaim deed and the purported marriage. Mack Murray asked the probate court to draw a negative inference from Quinton's refusal to testify at his deposition or strike Quinton's evidentiary hearing testimony. The probate court declined to rule on the motion for sanctions at that time.

Several months later, the probate court issued a written opinion. The court ruled that the purported marriage between the decedent and Mack Murray was invalid because the license expired before the wedding ceremony was held, and that acceptance of the completed marriage certificate by the clerk's office did not create a valid marriage. The court also found that the parties continued to live separate lives after the ceremony and did not hold themselves out to be a married couple. Accordingly, the court determined that Mack Murray was not the decedent's surviving spouse or an heir to his estate. The court declined to rule on Mack Murray's motion to sanction Quinton's testimony, but reasoned that "even if the adverse inference was applied to Quinton Murray's testimony, it would not change the outcome." Further, because Mack Murray was not an heir, she lacked standing to challenge the validity of the quitclaim deed transferring the Chicago Boulevard property to Quinton. Consequently, the court dismissed Mack Murray's petition challenging the validity of that deed.

Mack Murray now appeals.

## II. VALIDITY OF THE MARRIAGE

Mack Murray argues that she established the validity of her marriage to the decedent. As a result, she contends that the probate court erred by denying her motion for summary disposition and concluding after the evidentiary hearing that her marriage to the decedent was invalid.

## A. SUMMARY DISPOSITION

We review de novo a trial court's decision on a motion for summary disposition. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). Mack Murray moved for summary disposition under both MCR 2.116(C)(8) and (10), but the trial court denied the motion on (C)(10) grounds because Mack Murray relied on evidence beyond the pleadings. See *Krass v Tri-County Security, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The reviewing court considers affidavits, pleadings, depositions, and other documentary evidence in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted). When deciding a motion for summary disposition under MCR 2.116(C)(10), a court may not weigh the evidence or make credibility determinations. *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 512; 892 NW2d 467 (2016).

The probate court did not err by concluding that there were issues of material fact that precluded summary disposition under MCR 2.116(C)(10). It was undisputed that the marriage ceremony for Mack Murray and the decedent was held one day *after* the marriage license had expired. Although Mack Murray argued that other circumstances established the validity of the marriage, including that she and the decedent intended to marry and that they were advised by a clerk that it was unnecessary to renew the license before the ceremony, there were questions of fact about the veracity of Mack Murray's claims. Benson presented evidence that Mack Murray and the decedent did not intend to be legally married and intentionally waited until after the license expired for that reason. The parties also offered conflicting evidence about whether, after the ceremony, Mack Murray and the decedent lived together as a married couple and whether they held themselves out to friends, family, and government agencies as a married couple. This evidence raised a question of fact about the credibility of Mack Murray's claim that she and the decedent returned to the clerk's office before the wedding ceremony and were misled by a clerk into believing that it was unnecessary to renew the license before the ceremony. Because the issue of the validity of the marriage was dependent upon unresolved questions of fact that could not be decided on summary disposition, the probate court did not err by denying Mack Murray's motion for summary disposition.

## B. DECISION FOLLOWING EVIDENTIARY HEARING

Mack Murray also challenges the probate court's decision following the evidentiary hearing that her marriage to the decedent was invalid. We review the probate court's factual findings after an evidentiary hearing for clear error. *In re Horton Estate*, 325 Mich App 325, 329; 925 NW2d 207 (2018). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (citation omitted). But the trial court's interpretation of statutes is reviewed de novo. *Id*.

"[M]arriage is a civil contract" between two consenting parties. MCL 551.2.[3] "Consent shall be followed by obtaining a license . . . and solemnization . . . ." *Id*. Michigan law requires

---

[3] As currently codified, the statute provides that "marriage is a civil contract between a man and a woman . . . ." MCL 551.2. Our Legislature should consider updating the statute to conform with United States Supreme Court precedent. See *Obergefell v Hodges*, 576 US 644, 675-676; 135 S

that future spouses obtain and execute a marriage license for their union to be recognized as a legal marriage. MCL 551.101. "A marriage license issued is void unless a marriage is solemnized under the license within 33 days after the application." MCL 551.103a. Additionally, "[t]he original certificates and records of marriage made by the person solemnizing the marriage as prescribed in this chapter, and the record thereof made by the county clerk, or a copy of such record duly certified by such clerk, shall be received in all courts and places, as *presumptive evidence of the fact of the marriage*." MCL 551.18 (emphasis added). In Michigan, there is also "a strong presumption regarding the validity of a ceremonial marriage," one which can "only be overcome with clear and positive proof that the marriage was not valid." *Rodenhiser v Duenas*, 296 Mich App 268, 272; 818 NW2d 465 (2012) (quotation marks and citation omitted).

Mack Murray argues that because marriage is a contract, the acceptance of the marriage certificate by the clerk's office, despite the expired license, was effective to ratify the license and certificate as valid. The probate court rejected this argument because marriage is a contract between the party-spouses and the clerk's role is merely ministerial, such that the validity of a marriage cannot depend on the act of a clerk. MCL 551.18 reinforces that a marriage certificate filed with the county is only "presumptive evidence of the fact of the marriage." The presumption of a fact "place[s] the burden of producing evidence on the opposing party," and may be overcome when the opposing party presents sufficient evidence rebutting the presumption. *Widmayer v Leonard*, 422 Mich 280, 289; 373 NW2d 538 (1985). Thus, courts are not precluded from reviewing the transaction to determine whether the presumptive marriage complies with state law. The probate court properly considered all the circumstances to determine whether any presumptive validity of the marriage was overcome by contrary evidence introduced by Benson.

Further, the probate court did not err by finding that Benson presented "clear and positive proof" that Mack Murray's marriage to the decedent was not valid. See *Rodenhiser*, 296 Mich App at 272. First, it is undisputed that the marriage ceremony was held after the license had expired. Thus, the marriage license was void because the marriage was not timely solemnized. See MCL 551.103a. Although Mack Murray claimed that she and the decedent were assured by a clerk's office employee that their marriage would still be valid if the ceremony was held one day after the license expired, no employee who might have provided that advice was produced as a witness. On the contrary, the manager for the Vital Records Department denied that such advice was correct or that giving such advice was consistent with the clerk's office's policies. Moreover, testimony from Benson's siblings who attended the wedding supported that the decedent and Mack Murray knew that the license had expired and the marriage would not be legal, but they went through with the ceremony to help Mack Murray "save face" with friends, relatives, and church members. According to Jeffrey, the decedent explained that if he and Mack Murray decided that they wanted to legalize their marriage, they would obtain the appropriate paperwork at a later date.

Evidence was also presented that, after the ceremony, the decedent and Mack Murray lived and conducted their affairs in a manner inconsistent with being married. Despite Mack Murray's claim that she moved into decedent's home on Chicago Boulevard after the marriage, Benson

---

Ct 2584; 192 L Ed 2d 609 (2015) (holding that Michigan law is invalid to the extent that it excludes same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples).

presented substantial evidence to disprove that Mack Murray established her residence with the decedent. Quinton, who also lived in the decedent's home, testified that Mack Murray sporadically visited the decedent. While Quinton agreed that Mack Murray appeared to be in a romantic relationship with the decedent, he denied that she moved into the decedent's home or ever lived there as a spouse. Other friends and relatives who regularly visited the decedent at his home also denied seeing Mack Murray there. In addition, after the marriage ceremony, Mack Murray continued to maintain another residence, and she continued to identify herself as an unmarried woman on her tax returns.

Mack Murray offered testimony of friends who visited Mack Murray and the decedent at the Chicago Boulevard residence, and who believed that Mack Murray was living there with the decedent. But the probate court found this testimony insufficient to prove that Mack Murray was living with the decedent, rather than a frequent guest. Mack Murray argues that the probate court erred by discrediting her witnesses—notably Brenda Ramsey, Reverend Macheco Miller, and Mary Garland—in favor of Benson's witnesses, but we defer to the trial court's assessment of credibility. *Horton Estate*, 325 Mich App at 335 n 5; MCR 2.613(C). Ramsey testified that, after the wedding ceremony, she visited Mack Murray at the Chicago Boulevard house only once. Garland also had only minimal contact with the couple after the ceremony. Although Reverend Miller testified that he visited Mack Murray and the decedent at the Chicago Boulevard residence regularly, and believed that Mack Murray lived there, Benson presented substantial contrary evidence. The credibility of this competing testimony was for the probate court to resolve. See *Horton Estate*, 325 Mich App at 335 n 5. Considering the substantial evidence supporting the probate court's findings, we cannot conclude that these findings were clearly erroneous.

Mack Murray also highlights the evidence that the decedent added her to his private medical insurance through Ford Motor Company. Although this evidence is supportive of Mack Murray's claim that they were legally married, the probate court was entitled to give it less weight than other evidence, particularly if Ford Motor Company relied on the marriage certificate as proof of the marriage to allow Mack Murray to be added to the policy. And again, the probate court identified substantial other evidence that showed that the decedent and Mack Murray continued their separate lives after the ceremony in November 2016 and did not hold themselves out as a married couple.

Mack Murray contends that the probate court erred by failing to consider her argument that the doctrine of equitable estoppel precluded Benson from denying the validity of Mack Murray's marriage to the decedent. "Equitable estoppel arises where one party has knowingly concealed or falsely represented a material fact, while inducing another's reasonable reliance on that misapprehension, under circumstances where the relying party would suffer prejudice if the representing or concealing party were subsequently to assume a contrary position." *Adams v Detroit*, 232 Mich App 701, 708; 591 NW2d 67 (1998). Mack Murray argues that equitable estoppel applies because the county clerk falsely represented to her and the decedent that they could proceed with their scheduled marriage ceremony despite the expiration date on the license, and the clerk subsequently accepted and certified the license after the marriage. But the county clerk is *not a party* to this case. And Mack Murray does not allege that Benson, as the opposing party, "knowingly concealed or falsely represented a material fact, while inducing another's reasonable reliance on that misapprehension." *Adams*, 232 Mich App at 708. Thus, even under Mack Murray's version of events, equitable estoppel is not applicable. Because any alleged

misrepresentations were made by a nonparty, the probate court did not err by failing to consider the doctrine of equitable estoppel.

## C. EVIDENTIARY RULINGS

Mack Murray next argues that the probate court's decision must be reversed because of erroneous evidentiary rulings. We review the probate court's evidentiary rulings for an abuse of discretion. *Barnett v Hidalgo*, 478 Mich 151, 158-159; 732 NW2d 472 (2007). An abuse of discretion occurs when the court's decision is outside the range of principled outcomes. *Id*. at 158. Any preliminary questions of law on the admissibility of evidence are reviewed de novo. *Id*. at 159.

Mack Murray argues that the probate court erred by denying her motion in limine to exclude evidence of her IRS tax records and HUD housing records.[4] She argues that this evidence was inadmissible on four independent grounds: (1) it was not relevant under MRE 402, (2) its probative value was substantially outweighed by the danger of unfair prejudice under MRE 403, (3) the records were not properly authenticated, and (4) the records were inadmissible hearsay. We address each argument in turn.

## 1. RELEVANCE

"All relevant evidence is admissible" except as otherwise provided by law. MRE 402. Evidence is relevant "if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." MRE 401. "The threshold is minimal: any tendency is sufficient probative force." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 500; 960 NW2d 186 (2020) (quotation marks and citation omitted). In addressing Mack Murray's motion in limine, the trial court ruled that the IRS and HUD records were admissible only to the extent that they were "directly related to the marriage issue." On appeal, Mack Murray argues that these records had no probative value in determining whether a valid marriage existed between Mack Murray and the decedent.

The main issue in the case concerned the validity of Mack Murray's purported marriage to the decedent. Central to that issue was whether Mack Murray and the decedent intended for their November 2016 marriage ceremony to result in a legal marriage, or whether they participated in that ceremony knowing that the purported marriage would not be legal. As discussed earlier, Benson presented evidence that the decedent knew that the marriage was not legal because the marriage license had expired, and that the marriage ceremony was only a "mock" ceremony without legal effect. Whether Mack Murray had this same understanding and intent remained a disputed issue. The trial court, therefore, properly allowed evidence from the IRS and HUD records to be admitted for the limited purpose of determining Mack Murray's marital status.

Evidence that Mack Murray continued to maintain her own residence after the ceremony, and evidence showing how she identified her marital status on tax forms and HUD housing forms

---

[4] Mack Murray did not object below, nor does she argue on appeal, that Secretary of State records were improperly admitted.

was probative of whether she considered herself to be legally married to the decedent. Likewise, Mack Murray testified that after the wedding ceremony, she moved into the decedent's home on Chicago Boulevard and lived there until the decedent's death. Although Benson presented witnesses to contradict this testimony, the evidence that Mack Murray kept her home on Fenelon Street was probative of the veracity of Mack Murray's testimony. Mack Murray was also questioned about the yearly HUD certification forms she completed for the Fenelon Street property. On the forms, she did not list the decedent's name or advise HUD that her family size had increased. In addition, the fact that Mack Murray did not list herself as married on her tax forms was probative of whether she believed that she was legally married to the decedent. Mack Murray admitted that she never changed her filing status after the 2016 marriage ceremony. Because the challenged evidence was probative of whether Mack Murray considered herself married to the decedent, the probate court did not abuse its discretion by finding that the evidence was relevant.

## 2. MRE 403

Mack Murray also contends that even if the IRS and HUD records have "remote relevance," they were inadmissible under MRE 403 because any probative value was substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the factfinder.

Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Mack Murray has not shown why the IRS and HUD records were unfairly prejudicial or how they confused or misled the probate court. All evidence offered by an opponent may be prejudicial, but "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). The probate court recognized that the evidence was relevant for a limited purpose and admitted the evidence for this limited purpose, i.e., the extent to which it addressed whether Mack Murray held herself out as married or considered herself legally married. The probate court served as the trier of fact, and as such, "it is presumed to consider evidence for its proper purpose." *In re Conservatorship of Brody*, 321 Mich App 332, 348; 909 NW2d 849 (2017). The IRS and HUD records possessed substantial probative value, and Mack Murray has failed to establish that, on balance, this probative value was substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the factfinder. The probate court did not abuse its discretion on this ground.

## 3. AUTHENTICATION

Next, Mack Murray argues that the tax and housing records were admitted without a proper foundation. As a condition precedent to admissibility, evidence must be authenticated to show "that the matter in question is what its proponent claims." MRE 901(a). For purposes of authentication, the proponent of the evidence need only make a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be. *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 155; 908 NW2d 319 (2017).

In this case, Mack Murray acknowledged that the housing records were her statements filed with HUD or the Detroit Housing Commission, and that the submitted tax records were the returns that she filed with the IRS. Testimony of a witness with knowledge that a matter is what it is claimed to be is enough to establish a foundation for that evidence's admission. MRE 901(b)(1). When Mack Murray objected for lack of authentication, the probate court permitted Benson to question Mack Murray to determine whether the records could be authenticated. Mack Murray confirmed that she completed and filed the tax forms that she was shown. Mack Murray also did not dispute that the HUD forms shown to her were the forms she completed for her subsidized housing. Mack Murray's testimony established an adequate foundation under MRE 901(a) because she confirmed that the records were what Benson claimed they were. Thus, her authentication argument lacks merit.

## 4. HEARSAY

Lastly, Mack Murray claims the challenged records were inadmissible hearsay. Mack Murray did not raise a hearsay objection in her motion in limine, but she objected on hearsay grounds during the evidentiary hearing when Benson offered Mack Murray's tax records as evidence. Mack Murray suggested that the records were business records that could not be admitted with the testimony of a records custodian. The probate court never directly ruled on the objection but suggested that a foundation for admissibility could be established by examining Mack Murray.

Hearsay, an out-of-court statement offered to prove the truth of the matter asserted, MRE 801(c), is generally inadmissible, except as otherwise provided by the rules of evidence, MRE 802. The parties focus on the hearsay exception in MRE 803(6) for records of a regularly conducted activity, which provides:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge*, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity* to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless that source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. [Emphasis added.]

Otherwise known as the "business record exception" to the hearsay rule, MRE 803(6) allows for the admission of a "record that is compiled and kept in the regular course of business." *Merrow v Bofferding*, 458 Mich 617, 619, 627; 581 NW2d 696 (1998).

Putting aside the absence of testimony from a records custodian, the tax and housing records were not "kept in the course of a regularly conducted business activity." MRE 803(6). The pertinent records involve forms completed by Mack Murray when filing her personal tax

returns or annual certifications on residential property, not records she maintained in the course of business activity. Plainly, the challenged records were not "business records." Thus, MRE 803(6) does not provide a basis for admissibility.

In any event, we conclude that the records are not inadmissible hearsay for a different reason. While MRE 803 deals with *exceptions* to the hearsay rule, MRE 801(d) lists a few types of statements which are *not hearsay*. This group of statements includes admissions by a party-opponent. MRE 801(d)(2). Under this rule, a statement is not hearsay if it is "offered against a party" and is "the party's own statement, in either an individual or a representative capacity . . . ." *Id*. The tax and housing records were offered against a party—Mack Murray—and those records were admitted for the statements made by Mack Murray in her individual capacity that bore relevance to the validity of her marriage to the decedent. The hearsay rules define a "statement" as an "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). Undoubtedly, Mack Murray identifying herself as unmarried on tax forms, or certifying her residence as the Fenelon Street property, constitute written assertions made by Mack Murray. Thus, under the party-admission rule, these statements did not constitute hearsay. As a result, Mack Murray's contention that the tax and housing records were inadmissible hearsay lacks merit.

## III. VALIDITY OF THE DEED

Mack Murray requests that we set aside the quitclaim deed on the Chicago Boulevard property and hold that the property is part of the decedent's estate. She contends that Quinton knew the deed was forged and remained silent at his deposition to avoid criminal liability. As a result, Mack Murray argues that the trial court should have struck Quinton's evidentiary hearing testimony or drawn an adverse inference against the testimony. She also claims that the testimony of a handwriting analyst offered by Benson, who concluded the deed was signed by the decedent, was inadmissible, and that her own expert's opinion of a forgery should have received more weight.

The probate court concluded that Mack Murray lacked standing to challenge the validity of the deed since she was not the decedent's surviving spouse or heir. Because we are affirming the probate court's ruling that there was no valid marriage between Mack Murray and the decedent, we also agree that Mack Murray lacks standing to challenge the validity of the deed. In Michigan, standing is a "limited, prudential doctrine," and "a litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). A litigant may also have standing "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Id*.

Under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, "Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this act, except as modified by the decedent's will." MCL 700.2101(1). EPIC defines an "heir" as "a person, including the surviving spouse or the state, that is entitled under the statutes of intestate succession to a decedent's property." MCL 700.1104(p). It is undisputed that Mack Murray was not named in the decedent's will. Therefore, to have any rights to property passing through the decedent's estate, Mack Murray had to be an heir, which she

could only be as the decedent's surviving spouse. Under her theory, the quitclaim deed to the Chicago Boulevard property was forged and invalid, the property was part of the decedent's estate, and Mack Murray had an interest in the estate as the decedent's surviving spouse. But because the probate court did not err by concluding that Mack Murray was not the decedent's surviving spouse, Mack Murray was not an heir to the decedent's estate. Thus, she had no "substantial interest" in the Chicago Boulevard property and lacked standing to challenge the validity of the deed transferring rights in that property to Quinton. See *Lansing Sch Ed Ass'n*, 487 Mich at 372.

In this case, Quinton was permitted to invoke his right against self-incrimination at his deposition to the extent that his responses could criminally implicate himself. While Quinton claimed he was never seeking Fifth Amendment protection, he repeatedly exercised his "right to silence" to decline to answer any questions at his deposition. Yet he testified freely about the deed and the decedent's relationship with Mack Murray at the evidentiary hearing.[5] At the conclusion of Quinton's testimony, Mack Murray moved to strike this testimony about whether the decedent signed the deed and requested that the court draw a negative inference to the rest of his testimony. The probate court took the motion under advisement and noted that it had a range of options— including "ignoring all of his testimony" or giving it "some weight[.]" The court ultimately declined to address whether to draw an adverse inference, reasoning that "even if the adverse inference was applied to Quinton Murray's testimony, it would not change the outcome."

On appeal, Mack Murray links her argument about sanctioning Quinton's testimony with her belief that the deed was forged. While her argument is unclear, her claim of error appears to focus only on the probate court's decision declining a sanction on Quinton's testimony *about the quitclaim deed*. To the extent Mack Murray's argument is limited to Quinton's testimony about the deed, it is unnecessary to resolve this issue because Mack Murray lacked standing to challenge the validity of the deed.[6] But Quinton testified at the evidentiary hearing about more than the deed, offering information about the purported marriage and the decedent's relationship with Mack Murray. To the extent Mack Murray seeks a broader ruling to strike or draw an adverse inference against *all* of Quinton's testimony, we still find no error. Importantly, while the probate court declined to expressly rule on the issue, the court noted that "even if the adverse inference was applied to Quinton Murray's testimony, it would not change the outcome." Thus, even assuming the probate court should have drawn a negative inference against all of Quinton's testimony, the probate court already determined that such an inference would not have resulted in a different outcome. Nor would it affect our decision. Giving less weight to Quinton's testimony about the purported marriage, or even striking this testimony, would not change our decision to affirm the probate court's ruling that there was no valid marriage between the decedent and Mack Murray. As discussed, numerous witnesses testified similarly to Quinton that they did not believe Mack

---

[5] Quinton explained at the evidentiary hearing that he invoked the Fifth Amendment at his deposition, not because he believed his answers might incriminate him, but because he believed that he had a constitutional right to remain silent. The probate court corrected this misapprehension at the evidentiary hearing and Quinton did not refuse to answer any questions at the evidentiary hearing.

[6] For this same reason, it is unnecessary to address Mack Murray's argument that the testimony of Benson's handwriting expert should have been excluded because it was unreliable.

Murray lived at the decedent's home and that they rarely saw Mack Murray at the home when visiting the decedent. Striking or unfavorably viewing Quinton's testimony also does not change the undisputed fact that the marriage license had expired before the wedding ceremony and the collection of government records showing that Mack Murray's actions were inconsistent with entering a valid marriage. Thus, assuming without deciding that the probate court should have sanctioned Quinton's testimony, we continue to believe the court did not err by determining that the disputed marriage was invalid.

We also reject Mack Murray's argument that she is entitled to a new hearing because of the cumulative effect of the various errors raised on appeal. Having found no errors made by the trial court, this argument lacks merit.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett