*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HECTOR M HERNANDEZ SUPPLEMENTAL NEEDS TRUST.

LUISA MARTINEZ,

        Appellant,

v

DARREN M. FINDLING, Trustee of the HECTOR M. HERNANDEZ SUPPLEMENTAL NEEDS TRUST, HECTOR M. HERNANDEZ, JR., Personal Representative of the ESTATE OF HECTOR M. HERNANDEZ, BRYAN HERNANDEZ, and BRANDON HERNANDEZ,

        Appellees.

FOR PUBLICATION
October 14, 2024
2:15 PM

No. 366172
Wayne Probate Court
LC No. 2020-859846-TV

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

GARRETT, J.

This case requires us to interpret the relationship between the notice provisions of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., and the Michigan Court Rules governing settlement, probate, and trust proceedings. When Hector M. Hernandez, Sr. (Hector) died in 2021, he left about $2 million of settlement funds from a medical malpractice lawsuit in a trust designed to supplement his governmental assistance benefits. The parties now dispute who is entitled to the trust's remaining balance: appellant Luisa Martinez, pursuant to the trust's residuary clause, or Hector's estate. We affirm the probate court's grant of summary disposition to Hector's adult children and its alteration of the trust to direct the trust proceeds to Hector's estate.

-1-

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Before their divorce in 2012, Hector and Lilia Hernandez had three children, appellees Hector Hernandez, Jr., and Bryan and Brandon Hernandez. When Hector suffered a major stroke in 2014, he became quadriplegic and subsequently received a settlement of approximately $2 million in a related medical malpractice case. The trial court ordered that those funds be placed in "a special needs trust"[1] for Hector's benefit. Hector's sister and guardian, Luisa, hired an attorney, Darren Findling,[2] to assist with the trust's formation and become the eventual trustee. Findling's firm drafted the trust, which stated:

> The intent of this Trust [sic] to supplement any benefits received (or for which Hector M. Hernandez may be eligible) from various governmental assistance programs and not to supplant any such benefits. All actions of the Trustee shall be directed toward carrying out this intent. Hector M. Hernandez shall not be considered to have access to income and/or principal of the Trust and he has no power to direct the Trustee to make distributions of income and/or principal to him.

The trust also contained a residuary clause that provided:

> In the event that any Trust assets remain after payment for reimbursement to any state for medical assistance provided on the beneficiary's behalf as set forth above, *the remainder, after reasonable expenses and costs for maintaining the Trust, shall be distributed to Luisa Martinez*, unless Hector M. Hernandez leaves a valid Last Will and Testament or other estate plan which recites the power granted herein, directing the funds be distributed otherwise. [Emphasis added.]

In September 2020, Findling filed a petition for funding and supervision of the trust. The probate court authorized the proposed trust and Luisa, as grantor, and Findling, as trustee, signed the trust document. The probate court approved distribution of the trust funds in December 2020. Hector's children were not notified about any of these proceedings.

When Hector died in June 2021, Findling petitioned for a final account of the trust's funds and, in December 2021, the probate court approved the petition and ordered distribution of the trust's remaining balance to Luisa. Several motions followed. Hector's sibling, Yolanda Lopez, petitioned to reform the trust, Findling moved for rehearing on the final account, and Luisa

---

[1] A "special needs trust" may be established to benefit a disabled individual and requires that, when the beneficiary dies, the state must be reimbursed for the amount it paid for the individual's medical care. 42 USC 1396p(d)(4)(A). This "allow[s] a disabled beneficiary to receive assets without disqualifying the beneficiary for Medicaid assistance." *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 281; 931 NW2d 571 (2019) (MCCORMACK, C.J., concurring). Although Hector's trust was entitled a "supplemental needs trust," Article I of the trust provided that "[a]ll provisions of this Trust shall be interpreted to qualify this Trust under 42 USC §1396p(d)(4)(A) and the Special Needs Trust Fairness Act of 2013 . . . ."

[2] Although Findling is listed as an appellee, none of the issues in this appeal involve him.

challenged Findling's failure to distribute the trust proceeds to her as required by the court's final account order. Through these filings, Hector's adult children received notice of the proceedings for the first time and petitioned to vacate the probate's court order allowing a final account that distributed the trust's remainder to Luisa. The adult children ultimately moved for summary disposition under MCR 2.116(C)(10) and asserted that there was no question of material fact that Luisa and the probate court unlawfully created the residuary clause. The adult children argued that the trust was not properly formed because, as Hector's presumptive heirs, they were entitled to notice of the proceedings. The children also contended that the trust could not constitute Hector's will.

The probate court granted the children's motion and ruled that the court improperly authorized the trust because neither Findling nor Luisa notified Hector's adult children of the proceedings. According to the probate court, the residuary clause could not be deemed as Hector's will because (1) the trust lacked his signature, and (2) Luisa failed to produce clear and convincing evidence of Hector's intent to leave her the remaining balance and therefore failed to create a material question of fact. To remedy this issue, the probate court altered the trust's residuary clause and replaced Luisa with Hector's estate as the remainder beneficiary. The probate court also modified its order allowing a final account and directed all remaining assets to "the personal representative of the estate of Hector M. Hernandez." This appeal followed.

## II. NOTICE

Luisa argues that the probate court erred when it held that Hector's adult children were entitled to notice of the petition for funding the special needs trust. According to Luisa, only "the presumptive heirs of the protected individual" are entitled to notice. Luisa contends that Hector was not a "protected individual" at the time of the proceedings so notice was not required.

## A. STANDARD OF REVIEW

We review a decision on a motion for summary disposition and issues of statutory interpretation de novo. *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 494; 948 NW2d 452 (2019). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Id.* at 495 (quotation marks and citation omitted). The most reliable evidence of legislative intent is the statute's plain language. *Id.*

## B. DISCUSSION

It is undisputed that, before his death, Hector was legally incapacitated. Claims settled on behalf of persons who are legally incapacitated are governed by EPIC and the applicable court rules. MCR 2.420(A). After the circuit court approved Hector's settlement and ordered the creation of the special needs trust, Findling petitioned for funding under MCR 2.420(B)(5):

> If a settlement or judgment provides for the creation of a trust for the minor or legally incapacitated individual, the circuit court shall determine the amount to be paid to the trust, but the trust shall not be funded without prior approval of the trust by the probate court pursuant to *notice to all interested persons* and a hearing. [Emphasis added.]

-3-

Those interested persons include "the presumptive heirs of the protected individual. . . ." MCR 5.125(C)(29)(b), as amended August 14, 2019, 503 Mich ccxxvi (2019).

EPIC defines a "protected individual" as "a minor or other individual for whom a conservator has been appointed or other protective order has been made as provided in part 4 of article V." MCL 700.1106(x), as amended by 2018 PA 555. Among other things, "part 4 of article V" authorizes a probate court to make a protective order related to an individual's estate if the individual cannot manage his or her property due, in part, to disability, and money is needed for the individual's support. MCL 700.5401(3)(a) and (b). A probate court may enter a protective order authorizing a trust, if in a "proper proceeding" it is established that "a basis exists as described in [MCL 700.5401] for affecting an individual's property and business affairs" and the "court determines that the transaction is in the protected individual's best interests." MCL 700.5408(2). A person is "protected," then, even without a conservator, once a probate court authorizes a trust for their benefit pursuant to MCL 700.5401. See MCL 700.5408(2).

At issue in this case, though, is whether EPIC or the applicable court rules required notice to Hector's adult children when Findling petitioned to fund the special needs trust, before the probate court's authorization. In arguing that the adult children were not entitled to notice, Luisa focuses her analysis entirely on MCR 2.420, MCR 5.125(C)(29)(b), and the definition of a protected individual in EPIC. According to Luisa, because the court had not yet entered a protective order or appointed a conservator for Hector when Findling first petitioned for funding, the children were not the presumptive heirs of a "protected individual" entitled to notice of the proceedings. See MCR 2.420; MCR 5.125(C)(29)(b); former MCL 700.1106(x). But in making this argument, Luisa fails to address the probate court's ruling that Hector's adult children were entitled to notice not because he was a protected individual, but because Findling's petition for funding and approval of the trust was a "protective proceeding" under MCL 700.5401 and MCL 700.5408. This is significant because EPIC mandates further notice requirements for petitions for "protective proceeding[s]," or those proceedings requesting a protective order to protect the property of disabled persons. See MCL 700.1106(y), as amended by 2018 PA 555; MCL 700.5401 through MCL 700.5433. EPIC defines a proceeding as "an application and a petition, and may be an action at law or a suit in equity." MCL 700.1106(u), as amended by 2018 PA 555. These notice provisions apply *before* a probate court enters a protective order. "On a petition for a . . . protective order, the requirements for notice described in [MCL 700.5311] apply . . . ." MCL 700.5405(1)-(2). MCL 700.5311(1)(a), as amended by 1998 PA 386,[3] requires that notice of a hearing be provided to "[t]he ward or the individual alleged to be incapacitated and *that individual's spouse, parents, and adult children*." (Emphasis added). See also former MCR 5.125(C)(25)(b) ("The persons interested in an application . . . for a protective order are . . . the presumptive heirs of the individual to be protected[.]")

Neither party contests the probate court's conclusion that Findling's petition for authorization and approval of the trust was a protected proceeding or that the probate court's authorization of the trust was a protective order under EPIC. When MCL 700.5405 and MCL

---

[3] All references to MCL 700.5311 in this opinion are to the version in effect at the time of this litigation. The amended statute contains the same language relevant to this appeal.

700.5311(1)(a) are read together, it is plain that notice of a proceeding for a protective order must be given to the incapacitated individual's "spouse, parents, and adult children." We agree that the probate court's authorization of the trust was a protective order under EPIC. See former MCL 700.1106(y); MCL 700.5408. It is undisputed that Findling did not provide notice to Hector's adult children. Therefore, the probate court did not err by concluding that the proceeding to authorize the trust was improper.[4]

## III. VALIDITY OF RESIDUARY CLAUSE

Luisa asserts that any deficient notice to Hector's adult children was harmless because the trust's residuary clause was plainly valid and enforceable. According to Luisa, the probate court also erred by ruling that she failed to raise a genuine issue of material fact that Hector intended the trust to distribute the remaining balance to her upon his death.

### A. STANDARD OF REVIEW

We review a decision on a motion for summary disposition de novo. *Le Gassick*, 330 Mich App at 494. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Mr. Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 601; 997 NW2d 755 (2022) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider all the substantively admissible evidence in a light most favorable to the nonmoving party. *Heydon v MediaOne*, 275 Mich App 267, 269; 739 NW2d 373 (2007); MCR 2.116(G)(6). To the extent that we must interpret the trust, the "proper construction of a trust also presents a question of law subject to de novo review." *Le Gassick*, 330 Mich App at 496. "Interpretation begins with an examination of the trust language, and if there is no ambiguity, the trust terms are interpreted according to the plain and ordinary meaning." *Id*.

### B. DISCUSSION

On its face, the trust's residuary clause unambiguously requires that, upon Hector's death, any remaining trust assets must be distributed to Luisa after reimbursement to the state for medical assistance. While this would typically end our analysis, see *id*., interpretation of the trust in this manner directly contradicts the circuit court's order directing creation of the trust. When the circuit court approved Hector's medical malpractice settlement, it ordered Luisa to create a special needs trust for Hector's benefit. A "special needs trust" is established to benefit a disabled individual and requires that the state receive benefits upon the beneficiary's death up to the amount paid by the state for the individual's medical care. 42 USC 1396p(d)(4)(A). This type of trust, which is

---

[4] We conclude that the probate court correctly ruled that the proceedings to authorize the trust were improper for lack of notice, so we need not address its holding that the proceedings were improper because the trustee was not the proper person to petition for a protective order under MCL 700.5405.

"established solely for the benefit of an individual under 65 years of age," allows the individual to continue to qualify for medical assistance. 42 USC 1396p(c)(2)(B)(iv).

The circuit court stated, however, that Luisa, "the person serving as the fiduciary (guardian or conservator) is receiving no funds, individually, from the settlement/judgment." In other words, the circuit court granted Luisa, as Hector's guardian, the authority to create the special needs trust, but explicitly barred Luisa from receiving any funds from the settlement or judgment. Beyond this authority to create the trust, Luisa, as guardian, had no power to decide where Hector's property went upon his death. See MCL 700.5314, as amended by 2018 PA 594 (listing the powers of guardians, which do not include estate planning).[5] When Findling eventually drafted the trust, its stated purpose was "to supplement any benefits received (or for which Hector [Sr.] . . . may be eligible) from various governmental assistance programs and not to supplant any such benefits." Because the effect of the residuary clause goes beyond the circuit court's direction, Luisa's authority as guardian, and the limited intent of the trust, the trust provision naming Luisa as residuary beneficiary is void and unenforceable as written.

Regardless, the residuary clause may have been enforceable if Luisa could show that Hector intended for her to receive his property upon his death. Hector had no other estate plan, so if Luisa proved this intent, the probate court could have relied on the residuary clause as Hector's will. MCL 700.2502 provides, in relevant part:

> (1) . . . [A] will is valid only if it is all of the following:
>
> (a) In writing.
>
> (b) Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction.
>
> (c) Signed by at least 2 individuals, each of whom signed within a reasonable time after he or she witnessed either the signing of the will as described in subdivision (b) or the testator's acknowledgment of that signature or acknowledgment of the will.

Under MCL 700.2503, any document or writing that does not comply with the requirements of MCL 700.2502 "can constitute a valid will provided that the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute the decedent's will." *In re Estate of Horton*, 325 Mich App 325,

---

[5] The Michigan Supreme Court recently recognized that the list of powers delineated in MCL 700.5314 is not exclusive and that a probate court may grant a guardian powers outside of those expressly stated, limited in duration and scope to what is necessary for the ward's needs. *In re Guardianship of Malloy*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 165018 and 165020); slip op at 17-18; MCL 700.5306(2). But nothing in the record reflects that the circuit court or probate court granted Luisa this power.

332; 925 NW2d 207 (2018) (quotation marks and citation omitted). As this Court explained in *Kefgen v Davidson*, 241 Mich App 611, 625; 617 NW2d 351 (2000):

> Clear and convincing evidence is defined as evidence that produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Evidence may be uncontroverted, and yet not be clear and convincing. Conversely, evidence may be "clear and convincing" despite the fact that it has been contradicted. [Quotation marks and citations omitted; some alterations omitted.]

We agree with the probate court that Luisa failed to show by clear and convincing evidence that Hector intended the residuary clause to allocate his property upon his death. First, the trust was not executed as a valid will. See MCL 700.2502. It is undisputed that Hector did not sign the trust, and the trust only contained the signatures of Luisa, as grantor, and Findling, as trustee. Therefore, the trust itself supports the conclusion that Hector did not review or approve of the residuary clause.

And, when viewed in the light most favorable to Luisa, the extrinsic evidence does not clearly and convincingly show that Hector intended for the clause to allocate his property upon his death. In her deposition, Luisa testified that Hector told her multiple times that he wanted her to be the residual beneficiary of the trust. Luisa asserted that she even asked Hector before signing the trust whether he still wanted her to be the residual beneficiary and gave him a day to think about it. According to Luisa, the next day, Hector confirmed he wanted Luisa to be the residual beneficiary and Luisa signed the trust in her name as grantor. Two of Hector's siblings swore in affidavits that Hector also told them that he wished Luisa to be his sole beneficiary, though it is undisputed that these conversations occurred *after* execution of the trust. Because these conversations occurred after the trust's execution, they do not clearly and convincingly evidence Hector's intent when the trust was formed. Luisa also references an April 2021 clinical assessment of Dr. Marlana Geha, in which Dr. Geha wrote that "[Hector] further understands that the payment for his care will be coming out of his funds that are held in his Trust." While this statement evidences that Hector knew about the trust, it does not support Luisa's contention that Hector intended for Luisa to receive the trust's remainder. At most, this statement shows that Hector understood that Luisa and her family were receiving compensation for caring for Hector while he was alive, an understanding that is supported by the trust's recorded disbursements which include "caregiver" payments to Luisa's son and husband.

Luisa further testified that she heard Hector tell various employees at Findling's firm that he wanted Luisa to be the only residual beneficiary. Yet none of the attorneys deposed recalled ever speaking with Hector, and one of them confirmed that she never spoke to Hector. The firm's billing records are detailed, and they contain no entry about conversations with Hector or the "ward," though they reference several communications with Luisa, the "client," "the ward's sister," and the "guardian." It is reasonable to infer that the staff would note any conversation with Hector in these records. Therefore, the absence of documented interactions with Hector corroborates the testimony that no one at the firm actually spoke to him.

Luisa also asserts that she did not direct anyone at the firm to write the residuary clause, which according to Luisa, bolsters her argument that Hector requested this language. Luisa highlights the testimony from Findling's staff in which no one remembered Luisa asking them to put her name into the clause. But an absence of evidence does not constitute clear and convincing evidence that Hector asked Findling to include Luisa in the residuary clause. None of Luisa's evidence, besides her own deposition, showed that Hector wanted her to be the residual beneficiary when Findling drafted the trust. The trust was executed without Hector's signature, and Luisa's and Hector's siblings' assertions are not enough to establish clear and convincing evidence that Hector intended the residuary clause to allocate his property upon his death.

For these reasons, the fact that Findling failed to notify the children of the proceedings was not harmless error. The trust contained a large remainder balance, money that Hector's adult children validly had an interest in under the principles of intestate succession. See MCL 700.3101 (providing that, upon the death of a person who does not have a will, the decedent's property devolves to "the decedent's heirs"). Without notice of the proceedings, the children could not contest the residuary clause and its allocation of the remainder to Luisa. Therefore, the probate court did not err when it granted summary disposition in the children's favor and vacated its order allowing a final account. See MCR 2.613(A) (an error is harmless "unless refusal to take this action appears to the court inconsistent with substantial justice").

## IV. MODIFICATION

In her final argument, Luisa asserts that the probate court erred when it directed the trust's remainder to Hector's estate because the court improperly held that the existence of Hector's children was a "circumstance not anticipated by the settlor."

### A. STANDARD OF REVIEW

We review the probate court's dispositional rulings for an abuse of discretion. *In re Gordon*, 337 Mich App 316, 318; 975 NW2d 114 (2021). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted). "[A] court abuses its discretion when it makes an error of law." *Wolfenbarger v Wright*, 336 Mich App 1, 21 n 4; 969 NW2d 518 (2021) (quotation marks and citation omitted). And this Court reviews the probate court's factual findings for clear error. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017).

### B. DISCUSSION

After the probate court concluded that it authorized the trust during an improper proceeding, the probate court modified the trust under MCL 700.7412(2). To qualify for modification under this provision, two requirements must be met: (1) circumstances exist that were not anticipated by the settlor, and (2) the modification will further the settlor's stated purpose or probable intention if there is not a stated express purpose. The settlor is the "person, including a testator or a trustee, who creates a trust. If more than 1 person creates a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution." MCL 700.7103(i), as amended by 2018 PA 664.

In granting modification under this subsection, the probate court reasoned that the trust's purpose was to supplement Hector's governmental assistance benefits, and "the trust was created and authorized under the premise that [Hector] did not have children," which was an unanticipated circumstance. But it is apparent that the settlor, Luisa, grantor of the trust, knew that Hector had children. In fact, Luisa initially argued in the probate court that the children had no right to notice because they were not Hector's lawful heirs. Although the children were born during the marriage, Luisa contended that Hector did not consent to his wife's use of assisted reproduction while they were married. The probate court flatly rejected this argument. Implicit in this contention, though, is the fact that Luisa knew about the children, but did not believe they had any interest in their father's estate. Because Luisa knew about Hector's children, their existence was not an unanticipated circumstance as the probate court held.

Regardless, for the reasons addressed, the probate court properly changed the residuary clause to allocate Hector's remaining assets to his estate, which is the correct outcome because the residuary clause was void and the trust terminated upon Hector's death. Under MCL 700.7410, "a trust terminates to the extent the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved, or the purposes of the trust have become impossible to achieve or are found by a court to be unlawful or contrary to public policy." In this case, the trust's stated intent was "to supplement any benefits received (or for which Hector M. Hernandez may be eligible) from various governmental assistance programs and not to supplant any such benefits. All actions of the Trustee shall be directed toward carrying out this intent." When Hector died, the trust's purpose became impossible to achieve. Therefore, the trial court did not err by changing the void residuary clause to reflect the fact that Hector died without a will.

For the same reasons, the probate court correctly modified its order allowing a final account. MCL 600.848 ("Upon petition, where justice requires, and after due notice is given to all parties in interest, the probate court may grant rehearings and modify and set aside orders, sentences, or judgments rendered in the court.")

We affirm.

/s/ Kristina Robinson Garrett
/s/ Anica Letica
/s/ Kathleen A. Feeney